The AETNA CASUALTY & SURETY COMPANY, Appellant,

v.

MARTIN SURGICAL SUPPLY COMPANY, Appellee.

No. 01–84–00297–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 14, 1985.

Rehearing Denied April 26, 1985.

Reagan M. Brown, Fulbright & Jaworski, Houston, for appellant.

Charity M. O'Connell, Edmund L. Cogburn, Dow, Cogburn & Friedman, Houston, for appellee.

Before DUGGAN, SMITH and KEITH (Retired, sitting by assignment), JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment awarding treble damages and attorney's fees as indemnity for expenses of litigation. Appellee incurred the expenses by providing its own defense when a defense as an additional insured was available from appellant under a policy of insurance. Appellee's judgment was based on causes of actions under the Deceptive Trade Practices—Consumer Protection Act ("the DTPA"), Tex.Bus. & Com.Code Ann. sec. 17.41, et seq. (Vernon Supp.1985), and the Texas Insurance Code, Tex.Ins.Code Ann. art. 21.21 (Vernon 1981).

In an earlier suit filed in 1972, *Gibson v. Henley, et al,* ("the Gibson suit"), the appellee, Martin Surgical Supply Company, was one of four defendants charged with manufacturing and/or selling an allegedly

defective drug, Gomenol, to the defendant physician, Dr. Henley. In its answer filed in the Gibson suit, Martin claimed it purchased the drug from Myers-Carter Lab, Inc., a subsidiary of Chromalloy American Corporation. Unknown to Martin, Chromalloy and Myers-Carter were insured by the appellant, Aetna Casualty & Surety Company, under a policy of insurance containing a broad form vendor's endorsement which covered as an additional insured any company that distributed or sold Myers-Carter products.

In the Gibson suit, Aetna provided a defense under Chromalloy's policy to Myers-Carter only, and Martin hired its own legal counsel. Although Aetna knew that Martin was a customer of Myers-Carter, Myers-Carter informed Aetna that Martin purchased Gomenol from various companies. In early 1975, Martin filed a cross-action in the Gibson suit against Myers-Carter for indemnity for any liability and expenses incurred from Martin's sale of Gomenol purchased from Myers-Carter. In June and in November of 1975, Myers-Carter's attorney requested Martin's attorney to produce any invoices showing that Myers-Carter manufactured the Gomenol sold by Martin to Dr. Henley. Martin's attorney did not respond until June 11, 1976, one day after the conclusion of the Gibson suit.

Martin's attorney thereafter made a written demand on Aetna for reimbursement of Martin's legal expenses under the Aetna policy's vendor's endorsement. Aetna denied Martin's claim on the grounds that Martin did not timely request coverage and voluntarily incurred its legal expense. On a non-waiver agreement, Aetna thereafter represented Martin and Myers-Carter in the appeal of the case.

Martin filed the present suit against Aetna in July of 1978, alleging a cause of action for breach of the Aetna-Chromalloy insurance contract. By an amended petition filed in August of 1983, some five years later, Martin added causes of action asserting (1) violation of the DTPA, (2) violation of art. 21.21 of the Texas Insur-

ance Code, and (3) fraudulent misrepresentation.

Upon jury trial, the special issues based on Martin's theories of fraud, DTPA, and art. 21.21 causes of action were answered in Martin's favor. The issues submitting Martin's initial theory of breach of contract were answered in Aetna's favor, but were disregarded by the trial court when it entered judgment following the hearing on both parties' motions for judgment. The jury answered the fraudulent concealment issue in Martin's favor, but found that the concealment was not made willfully, such that no exemplary damages were awarded. Based on the DTPA and the Insurance Code art. 21.21 causes of action, the court entered judgment for Martin for actual damages of $9,190.41, which was trebled, and for attorney's fees.

Aetna urges nineteen points of error on appeal, and Martin urges two conditional cross-points.

Aetna's first point of error asserts that the trial court erred in rendering judgment based on jury answers to special issues asserting Martin's DTPA cause of action. In four sub-points, Aetna urges as a matter of law (1) that Martin is not a "consumer" under the DTPA; (2) that if Martin is a "consumer," it is not a consumer of goods, but of *services* for business or commercial use, an area specifically excluded from the applicable 1973 and 1975 versions of the DTPA; (3) that Aetna's failure to provide insurance coverage is not actionable under the DTPA; and, (4) that Aetna's failure to disclose the possibility of insurance coverage to Martin is not actionable under the DTPA.

In order to maintain a cause of action under the DTPA, a plaintiff must be a "consumer", defined in sec. 17.45(4) of the Act as "an individual who seeks or acquires by purchase or lease, any goods or services." *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex.1980). To qualify as a consumer, at least two requirements must be met: (1) the party seeking relief must have sought or acquired goods or services by purchase or lease; and, (2) the

goods or services purchased or leased must form the basis of the complaint. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

Aetna contends that Martin cannot be a "consumer" because it was not a party to Aetna's original contract of insurance with Chromalloy; that any rights Martin may have under that policy are those of a third-party beneficiary; and that a third-party beneficiary to an insurance contract is not a "consumer" under the DTPA as a matter of law. The language Aetna cites as authority for this contention, from *Hi-Line Electric Company v. Travelers Insurance Companies*, 587 S.W.2d 488 (Tex.Civ.App. —Dallas), *writ ref'd n.r.e. per curiam*, 593 S.W.2d 953 (Tex.1980), was specifically disapproved by the Texas Supreme Court's 1981 opinion in *Cameron v. Terrell & Garrett, Inc., supra*, which held that "a person need not seek or acquire goods or services furnished by the [defendant] to be a consumer as defined in the DTPA." *Id.* at 541.

■ A plaintiff is not required to prove a contractual relationship with the defendant to establish his standing as a consumer. *Flenniken* at 707. A third-party beneficiary of an insurance contract can be a consumer under the DTPA, provided he shows he purchased goods (Gomenol, the Myers-Carter manufactured drug, here) or services which were the basis of his complaint. *Cameron* at 541. We therefore conclude that appellee was a "consumer" in the transaction by virtue of its purchase of the drug.

Aetna next argues that even if Martin is a consumer under the DTPA, it is not a consumer of "goods" when it seeks the benefits of appellant's insurance coverage. Rather, Aetna argues, Martin is a consumer of services for business or commercial use, an area specifically excluded from the applicable version of the Act. Aetna urges that all of Martin's claims concern acts or omissions allegedly committed by Aetna before June of 1976, such that the 1973 and

1975 versions of the DTPA thereby apply. *Pennington v. Singleton*, 606 S.W.2d 682, 685 n.1 (Tex.1980). Section 17.45(2) of the Act, under both the 1973 and 1975 versions, reads:

"Services" means work, labor, or service purchased or leased for use, *for other than business or commercial use*, including services furnished in connection with the sale or repair of goods. (Emphasis added).

Thus, Aetna argues, one who seeks to acquire services for business or commercial use, such as the insurance protection here available to Martin from Aetna, is not a "consumer" under either the 1973 or 1975 versions of the Act.

Aetna points out that an insurance policy is covered by the definition of "services" in sec. 17.45(2) of the DTPA, *Dairyland County Mutual Ins. Co. v. Harrison*, 578 S.W.2d 186, 190 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ), and that an insurance policy that insures a business is a commercial service and was expressly excluded under the 1973 and 1975 versions of the DTPA. *Bennett v. Imperial Insurance Co.*, 606 S.W.2d 7, 12 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

■ We disagree with this analysis. Martin's relationship to Aetna occurred in the context of Martin's purchase of goods from Myers-Carter. Martin's purchase of the drugs established its status as a consumer to the entire transaction wherein Martin became a covered insured under Aetna's policy protecting Myers-Carter and the vendors of its products. As one involved in a transaction in goods, Martin was a "consumer" under the Act as to all persons who sought to enjoy the benefits of that transaction, and is entitled to relief under the DTPA against anyone who

... in the context of a transaction in goods, ... engages in an unconscionable course of action which adversely affects a consumer....

*Flenniken*, 661 S.W.2d at 707. As in *Flenniken*, the DTPA applies here although there is no contractual relationship be-

tween Martin and Aetna, and the conduct complained of occurred after Myers-Carter's sale of goods to Martin.

By its post-submission brief, Aetna additionally urges that Martin's purchase of the Gomenol in question was not a purchase of "goods" under the 1973 or 1975 versions of the DTPA. Under Sec. 17.45(1) of the 1973 Act, "goods" was defined to mean "tangible chattels bought for use." By a 1975 amendment, "goods" was expanded to mean "tangible chattels or real property purchased or leased for use." No statutory language of restriction or limitation on the word "use" has ever appeared in any version of the Act's definition of "goods."

Aetna urges that *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.), is authority that the purchase of tangible chattels or real estate for resale is not a purchase of goods for "use" under the 1973 and 1975 versions of the Act.

Aetna argues that when the Texas Supreme Court held in *Big H Auto Auction, Inc. v. Saenz Motors,* 665 S.W.2d 756 (Tex. 1984) that a purchase of tangible goods for resale after 1977 constituted a "use" under the DTPA, such that a buyer of the goods was a "consumer" within the Act, the court did not disapprove but merely distinguished *Ratcliff,* noting that it was decided under the 1975 Act.

We disagree with appellant's contention that *Big H Auto Auction* was not a criticism of *Ratcliff v. Trenholm.* The opinion pointed out that the term "use" (as an element of the definition of "goods" in sec. 17.45[1]) has been unchanged and unrestricted since the Act's 1973 inception, and that the Legislature has consistently rejected attempts to limit the term "use." In 1973, the Legislature deleted from the initial draft of the Act the words "primarily for personal, family, or household purposes" following "use." In 1975, the Legislature rejected an amendment to add "final" before "use." In concluding that goods bought for resale are covered by the DTPA, Justice Campbell noted that "[t]o

limit 'use' would be contrary to the statutory mandate of sec. 17.44 on [liberal] construction and application of the Act." 665 S.W.2d at 758.

■ In *Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455 (Tex.Civ.App.— Houston [14th] 1981, writ ref'd n.r.e.), the court held that under the 1973 version of the DTPA, the purchase of seed for use in a commercial farming operation was a purchase of goods and the purchasers were consumers under the Act. Chief Justice Brown wrote:

> Ring Around also urges that the definition of "services" [under the 1973 version of sec. 17.45(a)] excludes those rendered for commercial or business use and the definition of goods [under sec. 17.-45(1)] should be similarly limited. The use of limiting language in one definition, and its exclusion in another, does not evidence an intent to limit both definitions. To the contrary, it evidences an intent to limit one and not the other. The Act will be applied as written.

614 S.W.2d at 459. We conclude that the 1977 amendments to the definition of "services" in sec. 17.45(2) did nothing to change the earlier unrestricted meaning of the term "use" within the definition of goods in sec. 17.45(1). Accordingly, the 1973 and 1975 versions of "goods" should be interpreted to include goods for resale.

By its third subpoint, Aetna urges that its undisputed failure to provide insurance coverage is not actionable under the DTPA. The jury found Aetna's failure to provide coverage to be "an unconscionable action or course of action" (Special Issue No. 1), and a producing cause of financial loss to Martin (Special Issue No. 3).

■ Aetna asserts as an assumption, without explanation or authority, that "[t]he failure to provide insurance coverage is simply a denial of coverage." We disagree. Aetna's conduct in question was not a *denial* of coverage but a *concealment* from Martin, or a *failure to disclose* (as is treated in its next subpoint) the material facts that Myers-Carter had contracted

with Aetna for comprehensive general liability insurance coverage which entitled Martin to protection as an additional insured under Myers-Carter's broad form endorsement.

In further special issue answers, the jury found that Aetna failed to disclose to Martin that insurance coverage was available to it (Special Issue No. 5); that Aetna's failure to disclose was a "false, misleading, or deceptive act or practice" (Special Issue No. 6); and that such failure to disclose was a producing cause of financial loss to Martin (Special Issue No. 7).

In connection with the foregoing issues and answers, Aetna urges that its failure to disclose the availability of insurance coverage was not actionable under the DTPA prior to the Act's 1979 amendment. In argument, Aetna asserts that Section 17.-46(a) of the DTPA does not apply to an insurance company's failure to disclose the possibility of coverage "to a potential additional insured." In the case before us, insurance coverage was not merely available to Martin as a "potential" insured, but actually existent as a right to be claimed in the form of Myers-Carter's broad form endorsement that included Martin as an additional insured.

■ Aetna urges that sec. 17.46(b) was not amended until 1979 to add subdivision 23, which now gives consumers a specific cause of action for the failure to disclose information concerning goods or services. Because the alleged failure to disclose occurred prior to June of 1976, and subdivision 23 does not apply retroactively, Aetna contends that Martin cannot maintain an action under sec. 17.46(b)(23), citing *Ozuna v. Delaney Realty, Inc.*, 600 S.W.2d 780, 782 n.3 (Tex.1980). Aetna acknowledges that the Texas Supreme Court concluded in *Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 n. 1 (Tex.1982), that sec. 17.46(a) of the DTPA provided a cause of action for a "failure to disclose" prior to the 1979 addition of subsection 23. However, Aetna asserts that the narrow purpose of sec. 17.46(a) "was to guarantee to the consumer the greatest possible

knowledge about any potential undesirable features of a product," quoting *Sam Montgomery Oldsmobile Co. v. Johnson*, 624 S.W.2d 237, 240–41 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Thus, Aetna urges, the rationale behind the passage of sec. 17.46(a) is not applicable to the facts of this case. Such a restricted applicability of the section is contrary to the Act's mandate that its provisions be liberally interpreted for the protection of consumers. We reject each of appellant's four subpoints and overrule the first point of error.

Aetna's second point of error asserts that the trial court erred in rendering judgment for Martin on the jury's answers to the special issues based on art. 21.21 of the Texas Insurance Code because Martin cannot maintain such a cause of action as a matter of law.

■ Martin's cause of action under art. 21.21, sec. 16(a) was an alternative pleading to its DTPA action. In essence, art. 21.21, sec. 16(a) does nothing more than apply the DTPA to all insurance companies except county mutuals. Art. 17.22, Tex.Ins.Code (Vernon 1981); *Mobile County Mutual Insurance Co. v. Jewell*, 555 S.W.2d 903, 909 (Tex.Civ.App.—El Paso), *writ ref'd n.r.e. per curiam*, 566 S.W.2d 295 (Tex.1978).

Section 16(a) of art. 21.21 states that: Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance *or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices. (Emphasis added).*

■ Section 17.46(a) of the DTPA states that "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." Section 17.-46(b), commonly called the "laundry list",

states that "the term 'false, misleading, or deceptive acts or practices' *includes, but is not limited to,* the following acts:" and proceeds to list numerous actionable practices. (Emphasis added).

Appellant contends that because sec. 17.-46(b)(23), with its specific cause of action for failure to disclose information concerning goods and services, was not in effect at the relevant times in this case, appellee cannot rely on the general language of sec. 17.46(a) to maintain a cause of action for failure to disclose, citing *Mobile County Mutual Insurance Co. v. Jewell, supra.* In *Jewell,* the El Paso Court of Civil Appeals held that a cause of action under art. 21.21, sec. 16 is limited to acts or practices "defined" by sec. 17.46 of the DTPA, and because sec. 17.46(b) is the only part of the Act that furnishes definitions, a plaintiff must find its cause of action within that list. *Id.* at 911. However, by its own language, sec. 17.46(b) states that the "laundry list" is not all inclusive, and sec. 17.44 provides that the Act "shall be liberally construed and applied to promote its underlying purposes, ... to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty ...." *Pennington v. Singleton,* 606 S.W.2d 682, 686 (Tex.1980). To limit a consumer to a cause of action based only on those practices specifically enumerated would defeat the legislative intent of the Act. Furthermore, *Jewell* was prior to *Robinson v. Preston Chrysler-Plymouth, Inc., supra,* wherein the Texas Supreme Court concluded from the legislative history of sec. 17.-46(b)(23) that a "failure to disclose" cause of action was already covered by the then existing sec. 17.46(a). Appellant's second point of error is overruled.

Aetna's points of error three, four, five, and six all assert that the court erred in failing to render judgment for Aetna based on answers to four special issues that submitted Aetna's defense to Martin's breach of contract cause of action. By answers to these special issues the jury found that (1) Martin did not give reasonable notice to Aetna of its demand for coverage under the policy (Special Issue No. 13); (2) Martin did not immediately forward to Aetna every demand, notice, summons or other process received by Martin in the Gibson suit (Special Issue No. 15); (3) Martin voluntarily made payments, assumed the obligation of its defense, and incurred attorney's fees in the Gibson suit (Special Issue No. 16); and, (4) Martin or its attorneys failed to exercise reasonable diligence in determining whether it was covered by a policy of insurance issued by Aetna (Special Issue No. 17). The trial court disregarded these answers by implication when it rendered judgment for Martin on its DTPA and art. 21.21 causes of action.

Appellant urges that if we determine that Martin cannot recover under its DTPA or art. 21.21 causes of action, we should reverse and render judgment in its favor based on these answers. Our rulings upholding Martin's causes of action under those theories in points of error one and two effectively reject this alternative. Aetna's points of error three through six are overruled.

By its first counterpoint, Martin asserts that if its DTPA or art. 21.21 relief is disallowed, then it is entitled to judgment for breach of contract as a matter of law because the jury's findings reflect an erroneous theory of law, and are either irrelevant or unsupported by the evidence. We disagree.

Martin asserts that it had no duty to comply with the notice provisions of the Aetna policy until it had actual knowledge of the available coverage, citing *Allstate Insurance Co. v. Darter,* 361 S.W.2d 254, 255 (Tex.Civ.App.—Fort Worth 1962, no writ), which quoted Appleman, *Insurance Law and Practice,* Vol. 8, sec. 4745 in stating:

> An insured's lack of knowledge ... excused a delay in giving notice, as a matter of law, *where he was not guilty of a lack of due diligence.* (Emphasis added).

Such is not the situation before us.

The jury found by its answer to Special Issue No. 17 that Martin or its attorneys

failed to exercise reasonable diligence in determining whether Martin was covered by a policy of insurance issued by Aetna. The evidence showed that in June and November of 1975, the attorney for Myers-Carter requested Martin's attorney to locate any invoices showing that Martin had purchased the drug in question from Myers-Carter. Appellee's attorney did not respond to this request until June 11, 1976, one day after the conclusion of the Gibson suit.

■ This evidence and jury finding of lack of due diligence on Martin's part, coupled with Martin's failure to comply with the policy's notice provision, relieved Aetna from liability for breach of contract under the policy. Martin's first counterpoint is overruled.

■ Aetna's seventh point of error urges that the trial court erred in rendering judgment for Martin for attorney's fees based on the jury's answers to the three subparts of Special Issue No. 14, because Martin does not have a cause of action against Aetna for attorney's fees as a matter of law. It is true that the jury's answers adverse to Martin on the four breach of contract issues bar recovery on that basis, and Martin thus has no right to recover attorney's fees under Tex.Rev.Civ. Stat.Ann. art. 2226 (Vernon Supp.1984). However, Martin did recover under both its DTPA and art. 21.21 Insurance Code claims, and each of these Acts provides for recovery of attorney's fees. The court therefore did not err in rendering judgment based on answers to Special Issue 14. *See Kish v. Van Note*, 692 S.W.2d 463 (1985). Appellant's seventh point of error is overruled.

By its points of error eight and nine, Aetna asserts that the jury's answers to Special Issues No. 18 and 19 are contrary to "all the evidence or the great weight and preponderance of the evidence."

Special Issues No. 18 and 19 directed the jury to find the last day for which Martin incurred (1) damages, if any, from Aetna's failure to disclose the possibility of insurance coverage, if any (conditioned on a finding in Special Issue No. 5 that Aetna failed to disclose to Martin that insurance coverage was available to it); and (2) attorney's fees, in its defense of the Gibson suit. The jury's answers to both of these questions was "6/16/78." By answers to other special issues, the jury found that Martin's damages were the amount of legal fees it reasonably incurred in defense of the Gibson suit, $9,190.41.

The trial in the Gibson case ended June 19, 1976 and Aetna denied Martin's claim for coverage on June 23, 1976. Martin's attorney informed Myers-Carter's attorney by letter on June 25, 1976 that Martin's attorney's fees and expenses were $9,190.41, offered his time slips for examination, requested this information be forwarded to Myers-Carter, and asked to be advised of the type of coverage that Myers-Carter had available.

Almost two years later, on June 16, 1978, Martin's attorney wrote Myers-Carter's attorney, stating "I have now been advised that [Martin] has paid off the total amount" of the $9,190 defense costs incurred "through trial, and not including any work done on the subsequent appeal ...," and presented Martin's claim to Aetna for reimbursement for Martin's defense costs. Martin then filed this suit on July 3, 1978.

Aetna contends that, contrary to the jury findings, the evidence shows that all of Aetna's alleged acts or omissions were committed long prior to the trial of the Gibson case in June of 1976, and that all of Martin's attorney's fees and expenses had been incurred on or before June 25, 1976. While Martin's suit against Aetna was filed in July of 1978, the amendment to assert Martin's DTPA and Insurance Code art. 21.21 claims was not filed until August of 1983, at least seven years after Aetna's most recent possible conduct and five years after Martin's last attorney's fees were incurred.

■ Aetna's argument asserting the four and two-year statutes of limitation applicable to DTPA and Insurance Code

Art. 21.21 actions, respectively, does not comport with the error raised by these two points of error. Nevertheless, we hold that Martin's amendment of its pleadings to assert DTPA and Art. 21.21 Insurance Code actions allowably "relates back" to the time of filing of suit. The amended claims are not "wholly based on and [growing] out of a new, distinct or different transaction or occurrence" such as is proscribed by Tex.Rev.Civ.Stat.Ann. art. 5539b. *Leonard v. Texaco,* 422 S.W.2d 160, 163 (Tex. 1967) (suit in tort for seismic operations damage allowed to be amended to allege contract to pay for damages). The "relation back" doctrine has been specifically allowed in DTPA claims. *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ. App.—Waco 1981, writ dism'd).

Martin's suit was an action for indemnity for its expenses of litigation, and the right to indemnity does not arise until the loss indemnified against is either paid (as was here done by Martin) or suffered as a judgment. *Pate v. Tellepsen Construction Co.,* 596 S.W.2d 548, 552 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n.r. e.). Martin's attorney testified that "Mr. Koslin, I think, had paid our bill over a period of about two years and I think it was at that time that I made another or wrote another [June 16, 1978] letter to [Aetna's attorney] asking for reimbursement on behalf of [Martin]." The letter of June 16, 1978 and counsel's above testimony were the only evidence indicating the time Martin *paid* its legal fees, as contrasted with *incurring* them. No evidence appears in the record to the contrary. We hold that the testimony of counsel and the letter of June 16, 1978 are a sufficient basis to support the jury's answers to Special Issues No. 18 and 19. Appellant's eighth and ninth points of error are overruled.

Aetna's tenth point of error contends that the trial court erred in rendering judgment for Martin on the jury's answer to Special Issue No. 9 because that issue constitutes an impermissible comment on the weight of the evidence.

Special Issue No. 9 reads:

Do you find find [sic] from a preponderance of the evidence that *knowing Plaintiff to be misled as to material facts concerning insurance coverage,* Aetna intentionally kept Plaintiff misled *by concealing material facts from Plaintiff,* thereby causing Plaintiff to pay its own attorney's fees, proximately causing financial loss to plaintiff? (Emphasis added).

Aetna properly and timely objected to the submission of this issue as worded on the grounds that it constituted a comment on the weight of the evidence and presumed issues of fact.

Rule 277, Tex.R.Civ.P., states that the "court's charge shall not comment directly on the weight of the evidence," but shall not be objectionable on the ground that it "incidentally" does so. A comment on the weight of the evidence occurs when the trial judge indicates an opinion as to the verity or accuracy of the facts in inquiry. *McDonald Transit, Inc. v. Moore,* 565 S.W.2d 43, 44–45 (Tex.1978).

We agree with Aetna that Special Issue No. 9 constitutes an impermissible comment on the weight of the evidence, and that the trial court erred in submitting the issue as worded. The issue was not predicated upon an affirmative finding as to any earlier issue. We disagree with Aetna's argument that the issue assumes *two* disputed facts: (1) that Aetna knew Martin was misled as to material facts concerning insurance coverage; and (2) that Aetna concealed material facts from Martin. Instead, we construe the defective wording to be an effort to inquire about two fact issues, (1) and (2), but which erroneously *assumes* the existence of (1) and inquires about (2). See *Cactus Drilling Co. v. Williams,* 525 S.W.2d 902, 905 (Tex. Civ.App.—Amarillo 1975, writ ref'd n.r.e.).

Martin contends that this court approved the submission of a substantially identical special issue in *Reed v. Israel National Oil*

*Co., Ltd.*, 681 S.W.2d 228 (Tex.App.—Houston [1st Dist.] 1984). We disagree. *Reed* is distinguishable in that the facts there assumed were established by undisputed evidence, such that the terminology in question constituted at most an incidental, and not a direct, comment by the court on the weight of the evidence. In the present case, the evidence is disputed as to both of the matters in question.

However, contrary to the assertion of Aetna's point of error, the trial court did not render judgment based on the jury's answers to Special Issue No. 9, but impliedly disregarded it. While this issue submitted Martin's common law theory of fraudulent concealment, the judgment specifically recited that it was rendered for the plaintiff, Martin, based on the DTPA and art. 21.21 of the Texas Insurance Code.

Our concern therefore turns to whether the erroneous comment of the issue was harmless, on the one hand, or so prejudicial that it "infected and destroyed the findings made on the other issues submitting different theories of recovery." 3 R. McDonald, *Texas Civil Practice*, sec. 12.03.2 (1983).

Special Issue No. 9's inquiry was the third act by Aetna inquired about. Two earlier groups of issues submitted questions related to (1) whether Aetna's failure to provide coverage was "an unconscionable action or course of action," as defined, (Special Issues No. 1, 3, and 4); and (2) whether Aetna failed to disclose to Martin that coverage was available, and if so, whether that failure to disclose was "a false, misleading or deceptive act or practice," as defined (Special Issues No. 5, 6, 7, and 8). The instructions and definitions accompanying Special Issues No. 1 and No. 5 were each sufficient to make those issue groups self-contained units with no necessity to reference forward to the offending issue, which was positioned last. We conclude that the error in the comment was not harmful or prejudicial to earlier groups of issues submitting other theories of recovery. Aetna's tenth point of error is overruled.

Martin's first counterpoint asserts that, alternatively to the judgment under its DTPA and Art. 21.21 actions, it is entitled to judgment based on fraud and deceit as found under Special Issue No. 9. This special issue having been found to be improperly submitted, no judgment could be rendered on it. Martin's first counterpoint is overruled.

By its points of error 11 through 19, Aetna urges that there is no evidence or insufficient evidence to support the jury's answers to Special Issues No. 1, 3, 4, 5, 7, 8, 9, 12 and 13A.

In response to these two sets of issues, the jury found (1) that Aetna's failure to provide Martin coverage under the vendor's endorsement was "an unconscionable action or course of action" (defined as "an act or practice which takes advantage of another's lack of knowledge to a grossly unfair degree"); (2) that Aetna failed to disclose that insurance coverage was available; and (3) that each of these failures was a producing cause of financial loss to Martin.

In reviewing a legal insufficiency or "no evidence" point, this court must examine only the evidence and inferences therefrom tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Salazar v. Hill*, 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). In reviewing a factual insufficiency point, this court must examine the entire record to determine if there is any evidence of probative value to support the findings of the jury. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Aetna's investigation file contained a handwritten memo dated July 26, 1972 which read:

... Gominal or Gomenal
   Martin Surgical

  ·      ·      ·      ·

Vendor's Edt?

A hand-drawn arrow points from "Martin Surgical" to "Gominal." A copy of the vendor's endorsement appears in the file

within four pages of the memo. It can be inferred from the memo that Aetna was aware that Martin might be an additional insured because of its relation to the product, Gomenal.

A January 16, 1973 letter from the Houston attorney representing Aetna and its insured, Myers-Carter, addressed to Aetna, stated in pertinent part:

> there ... was no indication ... that our insured may have manufactured the Gomenol sold by [Martin] until a phone call from Martin's attorney ... in which he stated that *this is his understanding* ... (Emphasis added).

The same letter enclosed a summary of Dr. Henley's deposition, including his testimony that he had obtained the Gomenol from Martin.

A January 16, 1973 letter from Aetna's same attorney, addressed to Myers-Carter, stated:

> I have noted, however, in your correspondence that you mention [Martin] as one of your customers. Quite recently, *its attorney remarked that you had produced the Gomenol also involved in this suit for Martin.* (Emphasis added).

A Myers-Carter officer replied on February 5, 1973 to Aetna's attorney representing it:

> yes—we have supplied [Martin] with Gomenol. They have also purchased this product from other sources as well.

By a letter of January 4, 1974, the same attorney advised Aetna:

> Mr. Smelley of Coastal [another defendant] inquired informally whether Aetna might provide a defense for Coastal, but *no request or demand of any sort has been made by Coastal or [Martin], for whom Mr. Carter advises we were one of the manufacturers of its product under the brand name of Gomenol.* (Emphasis added).

In January of 1975, Martin filed a cross-action against Myers-Carter, specifically seeking indemnity based on Martin's purchase of Gomenol from Myers-Carter and Martin's resulting status as one in the chain of distribution between manufacturer and user.

Martin's attorney for trial of the Gibson case, Mr. John Golden, testified that a cross-action, such as the one he filed for Martin against Myers-Carter, constitutes a demand for coverage and "seeks indemnity which includes all costs of defense." He testified that either he asked Mr. Martin Koslin, the president of Martin, or Mr. Koslin told him, that Myers-Carter had told him there was no insurance help available and that he, Golden, "was satisfied that inquiry had been made and negative response had been given ..." He further testified:

> If I had been served with a cross-action as [Aetna's attorney was served with Martin's] I would have made an inquiry about the vendor's broad form endorsement and I would have called the lawyer back.

The testimony continued:

Q: (By Aetna's attorney): Mr. Golden, you will agree, in the years that you have been representing insurance companies, ... that the normal and customary practice, based on reasons stated in the policy ... is not to go out and tell people who already have a lawyer, well, you may have coverage and you may not. That is not the normal practice, that isn't done in the industry of insurance, is it?

A: I disagree with you.... if this cross-action was filed and there was a vendor's coverage, [as the insurer's attorney] I would have made an immediate inquiry if I had the knowledge, I would have called the lawyer and said we have got it. That is what you—

Q: That is assuming—

THE COURT: Let him finish.

AETNA'S ATTORNEY: I am sorry.

THE WITNESS: That is what you [the named insured] buy it for is to be service to your customer.

Q: (By Mr. Brown) Assuming of course that there is a demand, is that right?

A: I don't know what else it [the cross-action] could be construed [to be].

Q: That is how you [interpret] it, right?

A: Yes, sir. *It is a demand and notice and that is all I know to do.* (Emphasis added).

The plaintiff's fifth amended petition in the Gibson case, filed in February of 1975, contained an allegation that:

The aforesaid substances introduced and injected into Shannon Gibson's body ... were manufactured and/or supplied and sold *by the defendants [Martin] and Imperial Pharmaceutical Laboratories, Inc., a division of Myers-Carter Laboratories, Inc.*

In connection with the issues on failure to disclose coverage, the above exhibits, testimony, and pleadings were a sufficient evidentiary basis for the jury to find that Aetna knew Martin's involvement in the suit was due solely to its purchase of Gomenol from Myers-Carter, entitling Martin to coverage; that Aetna's failure to provide coverage was, in the circumstances, intended to induce Martin to provide its own coverage at its own expense; and that Martin would not have done so if the fact of coverage had been disclosed. In connection with the issues on failure to provide coverage, such evidence was sufficient to show an unconscionable action or course of action in Aetna's taking advantage of Martin's lack of knowledge to a grossly unfair degree. Points of error 11 through 19 are overruled.

The judgment is affirmed.