**AETNA CASUALTY & SURETY CO., Appellant,**

v.

**Robert W. MARSHALL, Appellee.**

**No. 01–84–0703–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 26, 1985.

Rehearing Denied Oct. 17, 1985.

Charles W. Hurd, III, Fulbright & Jaworski, Rodney P. Bridgers, Jr., Fulbright & Jaworski, Houston, for appellant.

Joe K. Longley, Mark L. Kincaid, Longley & Maxwell, Austin, for appellee.

Before DUGGAN, WARREN and HOYT, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment entered on a jury's verdict. In an earlier suit between the same parties, a worker's compensation claim was settled by entry of an agreed judgment that included a five-year open medical coverage provision. The present suit arose as a result of the manner in which the appellant, Aetna Casualty & Surety Company, handled post-judgment claims for reimbursement submitted by the appellee, Robert W. Marshall.

The principal questions in the present suit are: Does Texas law recognize causes of action by the settling injured worker against the worker's compensation insurance carrier arising out of the handling of medical claims during the post-judgment period:

(1) under Tex.Ins.Code Ann. art. 21.21, sec. 16 (Vernon 1981)? and

(2) under a duty of good faith and fair dealing to the injured worker?

We answer "Yes" to both questions.

Marshall sustained a back injury in a job-related accident in January 1976. He underwent back surgery in 1977, but continued to suffer pain and impairment. A settlement between Marshall and Aetna was approved by the district court on August 3, 1978. The open medical provision of the agreed judgment stated:

> Any future medical aid, surgery, hospital services, nursing, chiropractic services, medicines and rehabilitation benefits for the injuries made the basis of this lawsuit, provided that such medical care and treatment is incurred within 5 years from the date of this judgment and rendered by or at the direction of a competent physician, will be paid by the defendant, Aetna Casualty & Surety Company.

After the settlement, Marshall suffered continuing back problems, and saw a succession of doctors. He was treated in Houston by Dr. Dozier, who recommended a laminectomy, or spinal fusion. In 1980, a rhizotomy procedure was performed on Marshall by Dr. Boop in Little Rock, Arkansas. Later in 1980, Marshall returned to work in Wharton County and underwent a laminectomy in 1981 in Houston, performed by Dr. Bloom.

From almost the outset of the open medical period, Marshall's actual medical problems were paralleled by difficulties with Aetna in the handling of payment for his treatment. This was due to the fact that Aetna's claim file contained a proposed form of judgment which was not adopted, as well as a copy of the judgment actually entered. After extensive correspondence between the parties, the present suit was filed on June 25, 1979. The difficulties

continued, even though Marshall's attorneys provided Aetna a certified copy of the actual judgment containing the open medical provision. Successive Aetna claims personnel continued to refer to the erroneous form of order and acted under the premise that Aetna was authorized to approve the selection and costs of treating doctors, clinics, hospitals, pharmacies, and medical supply companies.

Marshall's trial pleadings alleged that Aetna made the representation and promise set out in the open medical provision to induce a compromise settlement agreement, and failed to keep its promise by not paying all of the medical bills as submitted and by delaying payment of many bills for an unreasonable period of time. Further, Marshall alleged that Aetna kept him from receiving necessary medical treatment by telling proposed health care providers that Aetna would not pay for such treatment and services.

As a first cause of action based on those alleged facts, Marshall asserted that such conduct by Aetna constituted an unfair and deceptive practice in the business of insurance and was actionable under section 16, art. 21.21 of the Texas Insurance Code in that: (1) Aetna's representation that it would provide benefits, followed by its failure to do so, violated Tex.Bus. & Com.Code Ann. section 17.46(b)(5) (Vernon Supp. 1985), the Deceptive Trade Practices Act; (2) Aetna's refusal to grant authority for necessary medical treatment, by telling prospective health care providers that Aetna would not pay their bills, violated State Board of Insurance Board Orders 18663 and 41060; and (3) Aetna's unreasonable delay in paying many submitted bills also constituted a violation of Board Orders 18663 and 41060.[1]

---

1. Tex.Ins.Code Ann. art. 21.21, sec. 16 (Vernon 1981) provides:

(a) Any person who has been injured by another's engaging in any of the practices declared ... in rules or regulations lawfully adopted by the Board under this article to be ... unfair and deceptive acts or practices in the business of insurance or in any practice defined by section 17.46 of the Business &

Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorney's fees rea-

As a second cause of action, Marshall alleged that Aetna's conduct in refusing some payments, delaying others, and refusing authority for treatment, constituted a breach of Aetna's duty of good faith and fair dealing arising from the relationship established between Aetna and Marshall by the agreed judgment, and was done willfully and with ill will, or, alternatively, with such an entire want of care as to raise the belief that such conduct was a result of a conscious indifference to Marshall's rights or welfare, entitling Marshall to actual and exemplary damages and attorney's fees.

Upon trial, the jury answered special issues and found: (1) that Aetna represented that it would provide certain medical benefits which it did not provide according to the judgment, and that such conduct was a producing cause of damages to Marshall; (2) that Aetna engaged in unreasonable delay in paying one or more of the medical bills submitted on behalf of Marshall, which was an unfair act or practice in the business of insurance and a producing cause of injury to Marshall; (3) that Aetna breached its duty of good faith and fair dealing in the way it handled one or more of Marshall's claims, which breach was a proximate cause of damages to Marshall; and (4) that Aetna exhibited, with respect to the breach, such an entire want of care as to raise the belief that its conduct was the result of a conscious indifference to Marshall's rights or welfare. In answer to the damages issues, the jury found that Marshall suffered $355 in unpaid medical expenses and $30,000 in past mental anguish, but no loss of credit standing (Special Issue No. 9), and awarded exemplary damages of $50,000 (Special Issue No. 10).

The trial court rendered judgment for $91,065, or three times the actual damages found in unpaid medical expenses and past mental anguish, plus attorney's fees and costs, pursuant to sec. 16 of art. 21.21. The court denied the exemplary damages found by the jury.

On appeal, Aetna asserts 30 points of error.

We first consider Aetna's points of error 26, 27, 28, and 29, which assert that there is no basis for Marshall's suit under either the duty of good faith and fair dealing or under art. 21.21 of the Insurance Code.

Aetna first asserts that Marshall's pleadings failed to state a cause of action because Texas courts do not recognize a duty of good faith and fair dealing, the theory of recovery for four special issues (6, 7, 8, and 10), and a partial basis of the damage issue (Special Issue No. 9). The trial court did not submit separate damage issues for each of Marshall's causes of action, but instead allowed the jury to use collectively its findings of proximate cause under all

---

sonable in relation to the amount of work expended;

\* \* \* \* \* \*

Section 17.46(b)(5) of the Deceptive Trade Practices Act defines "false, misleading, or deceptive acts or practices" to include "representing that ... services have ... benefits ... which they do not have...."

State Board of Insurance Order 18,663.001 (December 3, 1971), as amended by Order 41,-060 (June 4, 1982), provides:

[T]hese rules and regulations [are] to further define and state the standards that are necessary to prohibit deceptive acts or deceptive practices by insurers and insurance agents ... whether done directly or indirectly, and irrespective of whether the person is acting as insurer, principal, agent, employer, or employee, or in other capacity, or connection with such insurer.

\* \* \* \* \* \*

[.003] Unfair Trade Practices Prohibited.

(a) ... [U]nfair practices by insurers, agents and other persons are prohibited by art. 21.20 and art. 21.21 or by other provisions of the Insurance Code of Texas and by the rules and regulations of the State Board of Insurance. No person shall engage in this State in any trade practice that is a misrepresentation of an insurance policy, that is an unfair method of competition, or that is an unfair or deceptive act or practice as defined by ... the Insurance Code of Texas or ... these and other Rules and Regulations of the State Board of Insurance authorized by the Code. (b) Irrespective of the fact that the improper trade practice is not defined in any other section of these Rules and Regulations, no person shall engage in this State in any trade practice which is determined pursuant by law to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

theories of recovery in a single damage issue.

Aetna urges that the Texas Supreme Court in *English v. Fischer*, 660 S.W.2d 521 (Tex.1983), has negated the existence of a duty of good faith and fair dealing. We do not agree. *English* held that there is no implied *covenant* in every contract that neither party will do anything which injures the rights of the other party to receive the benefits of the agreement. However, *English* did not abolish the duty of good faith and fair dealing previously found in case law in many special relationships. Since the "Stowers doctrine" of *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, opinion adopted), Texas courts have recognized that certain contracts, including insurance contracts, may create a special relationship between the parties that includes the duty of good faith and fair dealing.

In *English*, the plaintiff homeowners sought to bar a mortgagee's enforcement of a specific provision in a fairly negotiated deed of trust by asserting an implied *covenant* of good faith and fair dealing. In our case, neither Marshall nor Aetna claims that the agreed judgment underlying the parties' relationship was unfair, and neither party seeks to avoid any provision of the judgment. We disagree with Aetna's characterization of the suit as one in the nature of a breach of contract to enforce payments due under the settlement agreement. Marshall's action is one seeking damages for Aetna's conduct in handling his claims that arose after the agreed judgment but during the course of the relationship created by the judgment.

As for Aetna's claim that Marshall failed to assert a cause of action under art. 21.21 of the Insurance Code, Aetna acknowledges that Texas courts "recognize a cause of action on an insurance policy properly brought under art. 21.21," but argues that there is no authority for such an action as that before us.

Contrary to Aetna's argument, other Texas courts have expressly held insurance carriers liable for "unfair and deceptive acts and practices" under art. 21.21. In *Allstate Insurance Co. v. Kelly*, 680 S.W.2d 595 (Tex.App.—Tyler 1984, writ ref'd n.r.e.), an insurance carrier was held liable under sec. 16, art. 21.21 for its unfair or arbitrary refusal, in the course of handling a claim, to settle within policy limits or to make a good faith effort to determine an amount due. In *St. Paul Insurance Co. v. McPeak*, 641 S.W.2d 284, 288–89 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (op. on reh'g), a cause of action against an insurance carrier for unfair settlement practices under art. 21.21 was recognized and severed from a worker's compensation claim. In *Aetna Casualty & Surety Co. v. Martin Surgical Supply Co.*, 689 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1985, ref'd n.r.e.), this court upheld an action under art. 21.21 by an additional insured, which was unaware of existing coverage in its favor, against an insurer which failed to disclose coverage and afford the additional insured a defense.

We hold that causes of action for the handling of open medical claims under a worker's compensation agreed judgment exist both under the insurer's duty of good faith and fair dealing toward the insured and under art. 21.21. Aetna's points of error 26, 27, 28, and 29 are overruled.

Twenty-two of Aetna's points of error are "no evidence" or "insufficient evidence" contentions.

In reviewing a no evidence point, the appellate court must consider only the evidence and reasonable inferences therefrom which, viewed in the most favorable light, support the jury finding, and must reject all evidence and reasonable inferences to the contrary. *Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984).

In reviewing an insufficiency of the evidence point, the court considers and weighs all the evidence, whether for or against the verdict, and reverses only if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662,

244 S.W.2d 660, 661 (1951); *e.g., Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

Aetna's first four points of error allege that there was no evidence or insufficient evidence to support the jury answers to Special Issues 1 and 2, findings that Aetna represented that it would provide Marshall certain medical benefits which it did not provide according to the judgment, and that such conduct by Aetna was a producing cause of damages to Marshall.

Aetna's attack on these points, as well as on others, centers on its complaint that the bills that Aetna did not pay or delayed in paying were not shown by Marshall to be "reasonable and necessary" for the services provided. We reject Aetna's argument that "there must be credible evidence in the record that (i) [Aetna] failed to pay medical bills (ii) which were reasonable and necessary." Neither the clear wording of the open medical agreement nor any other provision of the judgment imposed on Marshall the burden to show that future submitted medical bills would be reasonable and necessary. The agreed judgment required only that Marshall's medical expenses be incurred within five years from the date of the agreed judgment, be rendered by or at the direction of a competent physician, and be related to the injury made the basis of the suit. To allow Aetna to require that bills submitted be proven to be "reasonable and necessary" would be to sanction the unilateral imposition of an additional term.

The evidence showed that Aetna was well suited to determine the reasonableness of bills, and had routine practices and procedures to verify that bills submitted were appropriate. Aetna employed a medical cost consultant who determined through data computations whether questionable bills listed reasonable amounts. Aetna's senior claims representative, Patricia Cazenave, testified that she would personally contact a doctor and ask for a report, or call a pharmacy to provide the name of a medication, when Aetna had a question on a claim. Cazenave testified that Marshall never failed to furnish any information she requested. No evidence indicated that any doctor or pharmacy was unwilling to furnish Aetna information on request.

The proof required of Marshall in support of Special Issues 1 and 2 was, on the one hand, evidence of Aetna's representations of benefits it would provide under the agreement, and on the other hand, evidence that Aetna did not provide those benefits. Proof of the benefits Aetna represented was made by introduction of the agreed judgment. Proof of Aetna's failure to provide the promised benefits was shown by, among other instances, evidence that Aetna:

(1) refused to pay Dr. Fletcher's bill;

(2) refused to authorize payment for Marshall's treatment at a pain clinic recommended by Dr. Dozier, thereby denying him treatment prescribed by a competent physician;

(3) refused to pay Dr. Arthur's bills; and

(4) refused to fully reimburse Marshall for the cost of prescribed medications.

■ The evidence is legally and factually sufficient to support the jury's answers to Special Issues 1 and 2. Points of error 1, 2, 3, and 4 are overruled.

By its points of error 5 through 10, Aetna urges that there is no evidence and insufficient evidence to support the jury's answers to Special Issues 3, 4, and 5. By these answers, the jury found that Aetna engaged in unreasonable delay in paying one or more of the medical bills submitted for Marshall, that such delay was an unfair act or practice in the business of insurance, and was a producing cause of damages to Marshall.

We observe that Aetna's adjuster, Cazenave, testified that Dr. Roper's bill remained unpaid for 17 months after it was submitted, that Dr. Boop's bill was not paid for six months, that Central Baptist Hospital was not paid for four months, and that St. Joseph's Mercy Center was not paid for five months.

Aetna refused entirely to pay Dr. Garrett's bill for $251, Dr. Boop's bill for $8, and Dr. Kendrick's bill for $96. These

three bills constituted the unpaid medical expenses which the jury found as part of Marshall's actual damages in Special Issue 9. Aetna ultimately paid the three bills.

■ Only in June 1983, two months before expiration of the five year open medical period, did Aetna's attorney mention a "reasonable and necessary" requirement to Marshall's attorney. The evidence is legally and factually sufficient to support the jury's findings, and points of error 5 through 10 are overruled.

Aetna's points of error 11 through 16 relate to the jury's answer Special Issue 8, the finding of gross negligence, and Special Issue 9(b), the mental anguish damage award of $30,000.

Aetna first asserts by these points that, as a matter of law, Marshall is not entitled to the recovery of damages for mental anguish. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984), sets out the standard for allowing damages for mental anguish when there is no proof of attendant physical injury:

> Mental anguish damages are recoverable when there is proof of a willful tort, willful and wanton disregard, *or gross negligence.* [Citing authorities].
>
> . . . .
>
> In *Duncan [v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777 (Tex.1980) ] and *Farmers & Merchants State Bank [v. Ferguson,* 617 S.W.2d 918 (Tex.1981) ], we stated that we would allow recovery of damages for mental anguish when there was proof that the wrongful act was committed in a grossly negligent manner. Gross negligence means that there was an "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Company v. Walls*, 616 S.W.2d 911, 920 (Tex.1981).
>
> . . . .
>
> We are not attempting to equate the terms gross negligence, "knowingly," "willful" and intentional. *These terms lie on a continuum with gross negli-*
> *gence being the lowest mental state and intentional being the highest.* (Emphasis added).

667 S.W.2d at 117–18.

■ Special Issue 8, the gross negligence issue, was submitted in language almost identical to that set out in *Luna.* The jury's finding of gross negligence is a proper predicate for the mental anguish damages found in Special Issue 9(b) if the finding is sufficiently supported by the evidence.

■ In reviewing to determine if the evidence presented is sufficient to support a finding of gross negligence, an appellate court must consider all the surrounding facts and circumstances, not just individual elements or facts. *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 310 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A defendant's single action may be no more than ordinary negligence; however, when considered along with other negligent acts, it may become an element of what collectively constitutes gross negligence. *McPhearson v. Sullivan*, 463 S.W.2d 174, 175–76 (Tex.1971). This court must examine Aetna's connected acts of simple negligence to determine if they are sufficient to support the jury's finding of gross negligence. *Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316, 323 (Tex.App.—El Paso 1982, no writ).

■ Numerous singular acts by Aetna could constitute ordinary negligence when considered alone; they may constitute gross negligence when considered together. The evidence shows that Aetna was consciously indifferent to Marshall's rights from the outset of its relationship with him. Aetna's file on Marshall's case included an incorrect, unsigned form of judgment which contained the statement that only "reasonable and necessary" medical expenses would be paid. Within the same file was a copy of the correct, signed judgment that did not contain this phrase. Aetna's adjusters repeatedly ignored the file copy of the correct judgment and negligently continued to refer to the unsigned

judgment, even though the error was repeatedly pointed out by Marshall's attorneys. Aetna's senior adjuster, Cazenave, admitted that she was not diligent in documenting Marshall's file because she had "been in a hurry," and that any "snafu" which repeatedly resulted in Marshall not being able to go to the doctor of his choice was based upon the erroneous information in Aetna's file. These successive and repetitive acts of negligence, when considered collectively, suffice to constitute gross negligence.

When a jury determines there is gross negligence, and an appellant contends there is no evidence to support this finding, the reviewing court uses the traditional "no evidence" test: the evidence most favorable to the finding must be considered and every inference that may properly be drawn which supports the finding must be indulged. *McPhearson*, 463 S.W.2d at 175. The defendant's showing of "some care" is not sufficient to dispell a finding of gross negligence. *Burke Royalty Co.*, 616 S.W.2d at 921–22; *Putman v. Missouri Valley, Inc.*, 616 S.W.2d 930, 931 (Tex.1981). The instances of negligence outlined above are sufficient to support the jury's finding of gross negligence.

Aetna next urges that there is no evidence, or insufficient evidence, to support the jury's finding of damages for past mental anguish.

Marshall testified that as early as 1979, he began to suffer embarrassment over Aetna's failure to pay bills; that he had to do without pain medications for his ongoing back injury because Aetna failed to pay directly or to reimburse him for medical expenses; and that he began to receive phone calls and letters from collection agencies to whom his treating doctors and hospitals had turned over bills for collection. Marshall testified that because of Aetna's delays and partial payments, he had to borrow money from his sister to pay medical bills, and that "my credit was gone" because of medical collection agency reports. He testified that he was required to have a co-signer to purchase a truck because his credit was impaired, that he was refused credit by Goodyear for truck tires, and that he could not get further credit from a local pharmacy for medicines. He testified to loss of sleep, humiliation, and anxiety at having to borrow money from relatives.

Marshall's sister, Sue Vasquez, testified that she observed a change in his mental attitude from "happy-go-lucky" to "despondent, depressed, humiliated," and "on edge all the time" after Aetna's refusal to pay his bills promptly; that she feared he would commit suicide; that "[H]is self-esteem was real low.... He was real embarrassed," and "for him to ask anyone for money he suffered real humiliation for it." She attributed his personality change in large part to his inability to get Aetna to pay his bills promptly. We find this evidence of mental anguish sufficient to support the jury's award.

Finally, Aetna urges that if mental anguish damages are allowed, the amount awarded is excessive and a remittitur should be ordered. To be excessive, a damage award must be so large as to indicate passion, prejudice, corruption, or disregard of the evidence, and must shock the conscience of the court. *Houston Lighting & Power Co. v. Sue*, 644 S.W.2d 835 (Tex. App.—Corpus Christi 1982, writ ref'd n.r. e.). An amount of damages set by a jury will not be set aside as excessive if it is supported by probative evidence. *Armellini Express Lines of Florida, Inc. v. Ansley*, 605 S.W.2d 297, 310 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). In reviewing for excessiveness, an appellate court should consider only the evidence favorable to the award. *Texas Construction Service Co. v. Allen*, 635 S.W.2d 810, 812 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). We find no excessiveness in the jury's award of damage for mental anguish. Appellant's points of error 11 through 16 are overruled.

Aetna's points of error 17 and 18 assert that there is no evidence, or insuffi-

cient evidence, to support the jury's award of $355 for unpaid medical expense.

We have earlier considered and rejected Aetna's argument that Marshall had the burden under the agreed judgment to prove that his medical expenses were "reasonable and necessary." Cazenave, Aetna's senior claims adjuster, admitted that $355 was still unpaid by Aetna at trial time. This evidence is sufficient to support the jury's finding. Points of error 17 and 18 are overruled.

Aetna's point of error 19 urges that Marshall is not entitled to attorney's fees, and is predicated on its argument that Marshall has no cause of action under art. 21.21. We rejected this contention in our discussion of points of error 26, 27, 28, and 29.

 "Attorney's fees reasonable in relation to the amount of work expended" are provided by Tex.Ins.Code Ann. art. 21.21, sec. 16(b)(1) (Vernon 1981). Aetna stipulated at trial as to the amount of attorney's fees contained in the judgment. Aetna's point of error 19 is overruled.

Six points of error, numbers 20 through 25, center on Aetna's duty of good faith and fair dealing. Aetna urges that there is no evidence or insufficient evidence to support the findings that Aetna breached its duty of good faith and fair dealing (Special Issue No. 6), or that such conduct was a proximate cause of Marshall's damages (Special Issue No. 7), or that exemplary damages of $50,000 should be awarded (Special Issue No. 10). Inasmuch as the trial court did not render judgment awarding exemplary damages, Aetna's points of error 24 and 25 need not be considered, and are overruled.

Evidence previously mentioned showed delays in payment of many bills for four to five months, and one for 17 months, as well as outright refusal to reimburse for some prescribed medications. Three bills totalling $355 were still unpaid at trial. On one occasion, Aetna's adjuster telephoned a doctor and stated that it would pay neither Marshall's current bills nor future bills submitted by that doctor. Aetna failed to comply with the requirement of the agreed judgment when it refused to allow Marshall to attend a pain clinic recommended by Dr. Dozier. Although Marshall's attorneys attempted to correct Aetna's misunderstanding concerning the content of the judgment by sending at least three letters and placing numerous phone calls, Aetna persisted in delays in payment and refusals to pay. Cazenave, Aetna's senior adjuster, acknowledged that she did not follow Aetna's procedures for documenting the file, that she was in a hurry and was not diligent in documenting the file, and that Aetna's maintenance of erroneous information in Marshall's file prevented Marshall from being able to go to the health care provider of his choice.

 The results of Aetna's conduct were that doctors of Marshall's choice refused him further treatment, a hospital refused to discharge him, pharmacies refused to extend him credit, and he was forced to borrow money from relatives to pay for medicine, all of which he was entitled to have paid by Aetna under the judgment. The evidence supported the jury's findings both that Aetna breached its duty of good faith and fair dealing in the handling of reimbursements and payments due, and that such conduct was a proximate cause of damages. Points of error 20 through 23 are overruled.

Appellant's thirtieth point of error asserts that a new trial should be granted because the jury instruction regarding reasonable and necessary medical expenses was omitted from the court's charge given the jury for its deliberation.

 We have previously rejected this argument. The record contains no reference to any objection by Aetna to the omission in the charge complained of, and no bill of exception is included. Nothing is preserved for our review. *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 719 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Aetna's thirtieth point of error is overruled.

The judgment is affirmed.

HOYT, J., dissenting.

HOYT, Justice, dissenting.

I respectfully dissent. Robert W. Marshall, appellee, is not entitled to relief under the Texas Insurance Code, art. 21.21 (Vernon 1981), or under an implied covenant of "good faith and fair dealing."

The facts of this case indicate that Marshall was a third-party beneficiary of a Workers' Compensation policy issued by Aetna. Following an on-the-job injury, Marshall entered into an agreed judgment which was approved by the court. A dispute over the terms of that judgment led to this lawsuit.

The majority cites three cases for the proposition that article 21.21(16) is applicable in this case: *Allstate Insurance Co. v. Kelly*, 680 S.W.2d 595 (Tex.App.—Tyler 1984, writ ref'd n.r.e.); *St. Paul Insurance Co. v. McPeak*, 641 S.W.2d 284, 288 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (op, on reh'g); and *Aetna Casualty & Surety Co. v. Martin Surgical Supply Co.*, 689 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Except for *Aetna Casualty v. Martin*, these case are distinguishable from this case and do not stand for the proposition that a third-party beneficiary, standing alone, may recover under art. 21.21 of the Insurance Code.

The facts in *Kelly* indicate that Kelly was a passenger in a vehicle driven by Veevers. Veevers collided with Alves who was insured by Allstate Insurance Company. Kelly sued Alves for damages and eventually recovered a judgment that exceeded Alves' policy limits. After receiving a demand letter, presumably under the Deceptive Trade Practice Act (DTPA) from Alves, Allstate sued for declaratory judgment naming Alves and Kelly as defendants. Each defendant filed counterclaims alleging negligence on the part of Allstate. Alves assigned a portion of his cause of action against Allstate to Kelly. One of the questions raised involved the applicability of art. 21.21 and sec. 17.46 of the DTPA to a policy of insurance. Relying on *Dairyland County Mutual Insurance Co. v. Harrison*, 578 S.W.2d 186 (Tex.Civ.App.

—Houston [14th Dist.] 1979, no writ), the court held that the purchase of a policy of insurance constituted purchase of a service within the meaning of sec. 17.45(2) of the DTPA. Furthermore, the assignment of the cause of action was sufficient for Kelly to proceed against Allstate in conjunction with the policy owner.

In *McPeak* the court interpreted sec. 16 of art. 21.21 to permit a suit for unfair or deceptive acts and practices in the business of insurance. Although the question of the applicability of art. 21.21 was raised, it was not addressed or resolved. *McPeak*, 641 S.W.2d at 286. On rehearing, the court followed Tex.R.Civ.P. 174(b) and severed the unfair practice claim from the workers' compensation claim. This severance was not a judicial decree that a cause of action existed under art. 21.21, but allowed (1) the parties to pursue such a claim and (2) the judgment to become final regarding the workers' compensation claim. *Id.* at 289.

Neither of these cases stands for the proposition that a person who claims that he has been treated unfairly may recover on an action under art. 21.21(16) or sec. 17.46(b)(5) of the DTPA. These statutes were enacted principally to regulate conduct among insurance companies and between the companies and the policy holders, not those who are simply beneficiaries of the policy. Tex.Ins.Code Ann. art. 21.21 (4) (Vernon 1981).

Claims for deceptive practices that arise under art. 21.21(16) (read with sec. 17.46 of the DTPA) must comply with the requirements of the DTPA. In order to maintain a cause of action under the DTPA, a plaintiff must be a "consumer," defined in sec. 17.45(4) of the Act as "an individual who seeks or acquires by purchase or lease, any goods or services." *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex. 1980). A person who is a third-party beneficiary may become a consumer provided that he purchases goods or services which are the basis of his complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex.1981). He may also acquire consumer status for purposes of art. 21.21

through an assignment of the cause of action of one who is a policyholder, *Allstate*, 680 S.W.2d at 595, or through the assignment of a note resulting from the purchase or sale of real estate. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983).

Except for *Aetna Casualty v. Martin*, no case has been cited for the premise that a third-party beneficiary of an insurance policy may maintain a cause of action under art. 21.21 or the DTPA. I disagree with the holding in *Aetna*. Although no contractual relationship is required with the carrier, the plaintiff must be a "consumer." *Cameron*, 618 S.W.2d at 539. And, although a consumer is not required to show that he sought to acquire goods or services from the defendant he sues, the evidence must show that he was a party to a transaction in which he sought to acquire goods or services. *Flenniken*, 661 S.W.2d at 707.

Marshall was a third-party beneficiary under the terms of the agreed judgment. He had not purchased an insurance policy from Aetna and could recover only under the terms of the judgment. The judgment is the basis of Marshall's complaint and no goods or services were purchased in connection with it. Therefore, under *Riverside National Bank* and *Cameron*, Marshall remained a third-party beneficiary and did not acquire consumer status.

Because Marshall's employer owned the policy, Marshall could only acquire consumer status through an assignment. No such assignment was made; therefore, *Allstate v. Kelly* is inapplicable.

Similarly, no cause of action exists under an implied covenant of "good faith and fair dealing." An original proceeding which alleges this duty necessarily implies that a contract exists between the parties. *See Restatement Second of Contracts* sec. 205 (1979); *English v. Fischer*, 660 S.W.2d 521, 525 (Tex.1983) (Spears, J., concurring). Here we have more than a contractual agreement, we have a judgment. Marshall's remedy was not another original proceeding but one to execute on the judgment. Tex.R.Civ.Pro. 308. In addition to simply executing on the judgment, relief through motions for "attachment fine and imprisonment" is available. *Id.* This relief is still available.

The judgment of the trial court should be reversed and the cause dismissed.