**JAY FREEMAN COMPANY**

v.

**GLENS FALLS INSURANCE COMPANY.**

Civ. A. No. 3–79–0128G.

United States District Court,
N. D. Texas,
Dallas Division.

March 6, 1980.

Seay, Gwinn, Crawford, Mebus & Blakeney by Thomas E. Kurth, Kathryn Mallory, Dallas, Tex., for plaintiffs.

Robert H. Frost, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for defendants.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This is an action under a boiler and machinery insurance policy issued by defendant Glens Falls Insurance Company ("Glens Falls") to plaintiff Jay Freeman Company ("Freeman"). The case arises out of an accidental failure of one of Freeman's food freezers on August 28, 1978, resulting in the thawing and consequent loss of frozen food of a value of $28,023.54. Glens Falls concedes that the policy provides coverage for loss of thawed freezer contents, but maintains that it is excused from liability by virtue of Freeman's failure to use due diligence following the accident to protect itself from loss. Glens Falls has moved for partial dismissal of Freeman's claims under Tex.Bus. & Comm.Code arts. 17.46 and 17.-50, Tex.Ins.Code arts. 3.62 and 21.21, and Tex.Rev.Civ.Stat. art. 2226.[1]

### I. The Deceptive Trade Practice Claims

In its amended complaint, filed pursuant to the court's order of October 12, 1979, see n. 1, supra, Freeman asserts that Glens Falls' action in denying liability for Freeman's loss, and its alleged action in "warranting and representing" that the policy "conferred certain rights and benefits" upon Freeman in that the policy "provided coverage for certain losses," constitute de-

---

1. On October 12, 1979, the court granted in part an earlier motion to dismiss, rejecting the applicability of Tex.Bus. & Comm.Code arts. 17.50(a)(2) and 17.50(a)(3) to this case, dismissing a claim for common-law punitive damages, and dismissing the balance of the deceptive trade practice claims without prejudice for failure to comply with Fed.R.Civ.P. 9(b).

ceptive trade practices. Freeman relies on four statutory provisions (Tex.Bus. & Comm.Code arts. 17.46(b)(7), 17.46(b)(12), 17.46(b)(19), and 17.50(a)(2)) to support this contention.[2]

### A. Tex.Bus. & Comm.Code art. 17.46(b)(7).

Article 17.46(b)(7) makes it a deceptive trade practice to "represen[t] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." The applicability of this section turns on whether insurance policies, which unquestionably are not "goods," fall into the class of "services." In light of the presence of art. 17.46(b)(12), which proscribes similar conduct with respect to contractual rights, it is apparent that art. 17.46(b)(7) was not intended to include intangible contractual rights such as are conferred by policies of insurance. *Cf. Mobile County Mutual Insurance Co. v. Jewell*, 555 S.W.2d 903, 911 (Tex.Civ.App.—El·Paso 1977), *writ ref'd n. r. e. per curiam*, 566 S.W.2d 295 (Tex.1978) (art. 17.46(b)(2) not applicable to insurance policy).

### B. Tex.Bus. & Comm.Code art. 17.46(b)(12).

Article 17.46(b)(12) makes it a deceptive trade practice to "represen[t] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." This article might, under appropriate circumstances, serve as a basis for liability for misrepresentations made prior to the purchase of an insurance policy concerning the coverage provided by the policy. It cannot, however, be used to create treble damage liability for the mere denial of liability under a policy.

In *Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979), representations were made by a property damage insurer to its insured that vandalism to the insured's leasehold improvements was covered by its policy, when this was not in fact the case. These representations were made both before and after the purchase of the policy and the damage in question. Following the insurer's denial of liability, suit was brought under Tex.Ins.Code art. 21.21(4)(1) (*see* n. 2, *supra*), under a regulation of the State Board of Insurance, and under art. 17.46(b)(12). The Texas Supreme Court held that the representation made prior to purchase of the contract was actionable, since the plaintiff's reliance on the false representation of coverage had caused him to suffer an uninsured loss, but that the representation subsequent to the damage was not actionable, since it had caused no detrimental reliance. 577 S.W.2d at 694–95.

The inapplicability of art. 17.46(b)(12) to the *post hoc* denial of liability under a policy is reinforced by the case of *Lone Star Insurance Co. v. Griffin*, 574 S.W.2d 576 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.). In that case, in which no misrepresentations were made prior to the inception of the contract, the Court of Civil Appeals held that plaintiff had not been damaged in any way by the insurer's denial of coverage, since if wrongful that denial constituted a breach of contract which could be fully redressed by a suit for damages. Plaintiff in this case makes no allegation of damage as a result of the denial of liability above and beyond those damages recoverable under the contract. Hence it may recover, if at all, only for misrepresentations occurring prior to the commencement of the policy.

---

2. Interestingly, Freeman does not rely upon Tex.Ins.Code art. 21.21(4)(1), which is made actionable as a deceptive trade practice by Tex. Ins.Code art. 21.21(16)(a) and Tex.Bus. & Comm.Code art. 17.50(a)(4). Section (4)(1) provides that "[m]aking, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby . . ." shall be an unfair and deceptive trade practice. Misrepresentation of an insurance policy is also prohibited by § 4 of the Texas State Board of Insurance Regulation In Respect to Insurance Trade Practice, Advertising and Solicitations, Docket No. 18663, Dec. 3, 1971, and made actionable as a deceptive trade practice by Tex.Ins.Code art. 21.21(16)(a) and Tex.Bus. & Comm.Code art. 17.50(a)(4).

■ An examination of the proposed pretrial order in this case[3] reveals that the alleged pre-inception representations involved only (1) an express warranty that the policy covered loss of frozen foods due to the failure of a refrigerator unit (Contested Issue of Fact # 4); and (2) an implied warranty "regarding the benefits to and obligations of Plaintiff" (Contested Issue of Fact # 5). Neither of these is sufficient to support an art. 17.46(b)(12) claim. Article 17.46(b)(12), which speaks of "representations" rather than "warranties," was not intended to apply to implied warranties. Defendant has conceded that the policy provides *coverage* for the incident in question (Stipulated Fact # 5), thereby negating any damage to Freeman due to the alleged express warranty of coverage, and defends based on a specific condition of the policy which it alleges was violated, and as to which no misrepresentations are alleged. Hence Freeman cannot recover under art. 17.46(b)(12).

**C.  *Tex.Bus. & Comm.Code art. 17.-46(b)(19).***

■ Article 17.46(b)(19) makes it a deceptive trade practice to "represen[t] that a guarantee or warranty confers or involves rights or remedies which it does not have or involve  . . . ." This article deals with representations *about* warranties or guarantees, and not with ordinary representations, warranties, or guarantees about the goods and services themselves. No misrepresentations concerning warranties or guarantees of the insurance policy are alleged. Hence there can be no recovery under art. 17.46(b)(19).

**D.  *Tex.Bus. & Comm.Code art. 17.-50(a)(2).***

■ Article 17.50(a)(2) makes it a deceptive trade practice to breach an express or implied warranty. As discussed in section I(B), *supra,* no express warranty was violated. As to the alleged implied warranty "regarding the benefits to and obligations of Plaintiff," such an alleged warranty adds nothing to the benefits and obligations of the insurance contract itself. The terms of the policy themselves define its benefits and obligations, and no implied warranty can extend those terms. The policy covers what it covers, and Freeman has full recourse against its insurer for any covered losses. Hence there can be no "implied" warranty of benefits or obligations which the contract does not in fact have, and Freeman is not entitled to recover under art. 17.50(a)(2).

**II.  *Tex.Ins.Code art. 3.62***

■ Count III of plaintiff's amended complaint seeks recovery for violation of Tex.Ins.Code art. 3.62, in the amount of 12% of its loss plus reasonable attorneys' fees as provided by that statute. Defendant asserts that art. 3.62 is inapplicable to the policy in question.

Article 3.62 provides that

In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, [the amounts described above].

It is readily apparent that the policy in this case is neither a life nor a health insurance policy. Plaintiff's art. 3.62 claim thus turns on whether the policy is an "accident" policy.[4]

**3.**  This court has previously held that a pretrial order operates as an amendment of the pleadings to bring them into conformity with the order.  *R. T. Systems, Inc. v. Sandell,* No. CA–3–78–0005–G (N.D.Tex., Aug. 24, 1979) (order denying motion to remand).

**4.**  Although the statute speaks of types of companies rather than types of policies, its limitations are directed to life, health, and accident policies, and not to other types of policies which life, health, or accident insurance companies may issue.  *Evans v. Pacific National Fire Insurance Co.,* 367 S.W.2d 85, 87 (Tex.Civ. App.—Dallas 1963, writ ref'd n. r. e.); *see By-*

The Texas authorities on this question are indirect and conflicting. The only case to actually define the term "accident insurance" is *Reliance Insurance Co. v. Falkner*, 492 S.W.2d 721 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.). In that case, the court of civil appeals, citing 1 J. Appleman & J. Appleman, *Insurance Law and Practice* § 16 (1965), defined "accident insurance" as "insurance which pays to the insured indemnity or compensation for injuries sustained by him from certain causes or arising in a certain manner." 492 S.W.2d at 723. The court held an insured motorist policy to be outside this definition.

A policy covering hail damage to crops was held not to be an "accident" policy within the meaning of art. 3.62 in the case of *Bybee v. Fireman's Fund Insurance Co.*, supra n. 4, 331 S.W.2d at 914. Likewise, a fire insurance policy was held to be outside art. 3.62 in *Evans v. Pacific National Fire Insurance Co.*, supra n. 4, at 87. These authorities must be contrasted with the earlier case of *National Live Stock Insurance Co. v. Gomillion*, 178 S.W. 1050 (Tex.Civ. App.—Austin 1915, writ ref'd), decided under the now-repealed Tex.Rev.Civ.Stat. art. 4746. In that case, a policy of insurance on a mule was held to be covered by art. 4746.[5]

■ In light of these conflicting pronouncements of the Texas courts, this court must decide whether to follow *Bybee* and *Evans* or *Gomillion* on the question of whether property damage insurance constitutes "accident insurance" under art. 3.62. Applying the rule of *ejusdem generis*, under which words or phrases in a sequence are construed in conformity with the construction given other words or phrases in that sequence, the term "accident insurance" must be given a meaning related to the other types of personal insurance with which it is juxtaposed. *See Aetna Life Insurance Co. v. J. B. Parker & Co.*, 96 Tex. 287, 72 S.W.2d 168 (1903) (accident insurance more analogous to life insurance than to fire or marine insurance). When this is done, it becomes apparent that the policy in the present case, which insures against accidental damage to the insured's machinery together with liability of the insured for personal injury or property damage suffered by others, is not covered by art. 3.62. The *Gomillion* decision, standing in conflict with two more recent decisions and running contrary to this reasoning, must be disregarded as an aberration.

For the foregoing reasons, count III of the complaint must be DISMISSED.

### III.  Tex.Rev.Civ.Stat. art. 2226

■ Plaintiff seeks recovery of its reasonable attorneys' fees pursuant to Tex. Rev.Civ.Stat. art. 2226. Defendant has moved to dismiss that claim on the ground that it meets the exception to that statute for "contracts of insurers [sic: insurance?] issued by insurers subject to the provisions of . . . Article 21.21, Insurance Code, as amended . . . ." Since Tex.Ins. Code art. 21.21 applies to any "person," including corporations, engaged in the business of insurance in Texas, *see* Tex.Ins.Code art. 21.21, § 2(a), the insurance contract at suit is not subject to art. 2226. Plaintiff's claim for attorneys' fees under that statute is DISMISSED.

### IV.  Conclusion

Glens Falls' motion for partial dismissal is hereby GRANTED in all respects.

---

bee v. Fireman's Fund Insurance Co., 160 Tex. 429, 331 S.W.2d 910, 914 (1960); *Maryland Casualty Co. v. Hopper*, 237 S.W.2d 411, 416 (Tex.Civ.App.—El Paso 1950, no writ); *Ocean Accident & Guaranty Corp. v. Northern Texas Traction Co.*, 224 S.W. 212 (Tex.Civ.App.—Fort Worth 1920, writ dism'd); *Aetna Accident & Liability Co. v. White*, 177 S.W. 162, 168 (Tex. Civ.App.—Dallas 1915, writ ref'd).

5. Defendant urges that the court disregard *Gomillion* since that decision was reached under a different statute. In light of the fact that the two statutes (art. 3.62 and former art. 4746) are similarly worded, *Evans v. Pacific National Life Insurance Co.*, supra n. 4, at 87, and in light of the Texas courts' willingness to rely on art. 4746 cases in construing art. 3.62, *id.*, this contention must be rejected.