COOK CONSULTANTS, INC. and Stewart Title Guaranty Co., Appellants,

v.

Jean M. LARSON, Appellee.

No. 05–83–00451–CV.

Court of Appeals of Texas, Dallas.

Aug. 30, 1984.

Rehearing Denied Sept. 28, 1984.

William R. Allensworth, Daniel E. Westbrook, Haynes & Boone, Dallas, for appellant, Cook Consultants, Inc.

Edmund R. Wood, Chancellor, Wood & Martin, Dallas, for appellant, Stewart Title Guaranty Co.

Robert E. Luna, Dallas, for appellee.

Before AKIN, SPARLING and GUILLOT, JJ.

SPARLING, Justice.

Larson purchased a house that she later found to be partially built on her neighbor's lot. As a result, Larson sued Stewart Title for breach of its title policy and Cook Consultants for negligence in surveying her property. In two appeals, Larson complains of an instructed verdict in Stewart Title's favor, and Cook alleges a variety of errors in a trial in which Cook was found to be liable for negligent misrepresentation. We hold that, as a matter of law, Stewart Title was not liable and that the statute of limitations barred Larson's suit against Cook. Accordingly, we affirm the Stewart Title case and reverse the Cook Consultants case.

### Facts

In 1970, Commonwealth Development Corporation, the builder of Larson's home, contracted with Cook Consultants to perform a completion survey that would locate all improvements on the lot. The survey

revealed that the house was within the lot lines, and, consequently, Modern American Mortgage Corporation approved Larson's loan, and Larson purchased the property. In 1977, Larson's neighbor, Bates, suspected an encroachment and hired Robert West to resurvey Larson's lot. West discovered that Larson's house encroached on Bates' property by two and one-half to six feet. Bates sued Larson, and the Court ordered Larson to "remove all improvements encroaching upon [Bates'] property" within ninety days of judgment.

The parties stipulated that removal of a portion of the house was economically and physically impracticable. Accordingly, Larson, in October, 1979, hired a demolition company to tear down the entire structure. She sued Stewart Title for breach of contract, alleging that her title insurance policy insured against the encroachment, and joined Cook, alleging negligence, breach of contract to a third party beneficiary, and breach of express and implied warranties. The judge granted Stewart Title's motion for instructed verdict, and the jury, finding Cook grossly negligent, awarded Larson $32,150.00 in actual damages and $230,000.00 in exemplary damages.

I. *Instructed Verdict for Stewart Title*

■■■ An instructed verdict is appropriate only if reasonable minds could not disagree as to the truth of controlling factual issues, and the movant is entitled to judgment as a matter of law. In reviewing the evidence to determine if a material fact issue exists, we consider the evidence in the light most favorable to the nonmovant and disregard contrary evidence. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978).

There is no dispute that Larson's house encroached on her neighbor's property and that Cook's completion survey was in error. Stewart Title argues, however, that Larson's title insurance policy excepted the encroachment. The policy insured that "as of the date hereof [July 10, 1970], the assured has good and indefeasible title to the ... described land." The policy excepted

from coverage "[a]ny discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments, or any overlapping of improvement." Larson characterizes the overlap as a "protrusion," contending that "encroachment" means that which comes into or onto her lot from without. She argues that because "protrusion" is not specifically listed in the exemption clause, the contract is ambiguous, and the ambiguity must be resolved in her favor and against the insurer.

A policy of insurance is construed liberally in favor of an insured and strictly against an insurer. *Glover v. National Life Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). All parts of an insurance contract, however, must be taken together and given such meaning as will carry out and effectuate the intent of the parties. *Spillars*, 368 S.W.2d at 94.

■■■ We hold that the provisions of the policy are unambiguous; thus, construction is a question of law for the court. *Brown v. Payne*, 142 Tex. 102, 176 S.W.2d 306, 308 (1944); *Manes v. Dallas Baptist College*, 638 S.W.2d 143, 145 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Aztec Services, Inc. v. Quintana-Howell Joint Venture*, 632 S.W.2d 160, 163 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Giving effect to the intent of the parties as expressed or apparent in the instrument, we hold that the title policy does not insure against the "protrusion." The policy clearly was intended to guarantee only indefeasible title to the lot described. Hence, whether characterized as a discrepancy, encroachment, protrusion, or boundary dispute, the policy does not, as a matter of law, insure that portion of Larson's house that extended beyond her lot line, and, accordingly, the instructed verdict was proper.

■■■ Larson, by point of error, argues that Stewart Title breached a covenant of good faith and fair dealing implied in the contract. Larson conceded in oral argument, and we hold, that we cannot imply in

the contract a covenant of good faith and fair dealing or a promise that neither party will do anything that injures the right of the other party to receive the benefits of the agreement. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). Accordingly, we affirm.

## II. *Surveyor's Liability*

Appellant, Cook Consultants, appeals a judgment of liability for negligently misrepresenting the location of Larson's house. Cook argues that even if the discovery rule applies, there was no evidence to support the jury's finding that Larson's action was not barred by the statute of limitations. We agree.

 Larson's claim arose under the two-year statute of limitations, TEX.REV. CIV.STAT.ANN. art. 5526 (Vernon Supp. 1984). *See Westchester Corp. v. Peat, Marwick, Mitchell & Co.*, 626 F.2d 1212, 1217 (5th Cir.1980); *Woodburn v. Turley*, 625 F.2d 589, 592 (5th Cir.1980). Generally, a tort cause of action accrues at the time of the negligent act or omission, despite the difficulty of ascertaining damages until a later date. *Bauman v. Centex Corp.*, 611 F.2d 1115, 1118 (5th Cir.1980). If, however, the discovery rule applies, a cause of action accrues when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the negligence. *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex.1977); *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976). In evaluating a "no evidence" point, we may consider only the evidence and inferences that tend to support the finding and must disregard contrary evidence and inferences. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982).

 We need not determine whether the discovery rule applies in the instant case because even if it does, the evidence indicates that Larson actually discovered the survey error more than two years prior to the institution of suit, and, therefore, Larson's suit against Cook is barred by limitations.

Larson filed suit on July 10, 1979. Bates testified that on June 6, 1977, he confronted Larson's daughter with the boundary issue:

Well, she asked me why I was back there mowing that yard, that part of the yard, and I indicated that I had a survey done which indicated that her mother's house was situated partially onto my lot, and I already turned my paper work over to my attorneys, and they'll be calling her in a couple of days to find out what paper work she has so that we can get this boundary work settled, and she said that she would talk to her mother, and I also showed the boundary work markers, there was one that I showed, like a big nail with a red tag around it, ribbon and of course, you know, peg out front and one further on back.

Larson acknowledged that at 9:30 p.m. her daughter told her of the incident and that Bates had said, "This is my yard." Larson testified that she thought the claim was "hilarious" and that it was "totally meaningless to me."

We hold that Bates put Larson on inquiry notice of the survey error prior to July 10, 1977. Although after July 10 Larson began a series of investigative steps to determine the truth of Bates' claim, *ex post facto* efforts to confirm or refute Bates' claim do not alter the fact that she had actual knowledge of the possibility of the survey error prior to July 10, 1977. Thus, the evidence does not support Larson's claim that she did not know of the error until November 22, 1977, when she was served with process for Bates' suit or until December 1978, when Cook admitted at trial that the survey was erroneous. Accordingly, we hold that there was no probative evidence that she did not discover the error until after July 10, 1977, and we reverse and render judgment that Larson take nothing.