Ronald **CHITSEY**, Appellant,

v.

**NATIONAL LLOYD'S INSURANCE COMPANY, et al., Appellees.**

**No. 14230.**

Court of Appeals of Texas, Austin.

Oct. 30, 1985.

Rehearing Denied Nov. 20, 1985.

Joe K. Longley, Mark L. Kincaid, Longley & Maxwell, Austin, for appellant.

David M. Moore, Wilson, Grosenheider & Burns, Austin, for appellees.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

## ON MOTION FOR REHEARING

SHANNON, Chief Justice.

The opinion of the Court in this cause handed down on August 28, 1985, is withdrawn and the following opinion is substituted therefor.

Appellant Ronald Chitsey sued National Lloyd's Insurance Company and a local insurance agency in the district court of Travis County. After trial to a jury, the district court rendered judgment that Chitsey take nothing. This Court will reverse the take-nothing judgment and remand the cause for entry of judgment.

Chitsey purchased from National Lloyd's a fire policy insuring against loss to a duplex located at 5107 Leralynn in Austin. The face amount of the coverage was $16,-000.00. The policy provided that upon loss the insurer would pay those sums necessary to repair the duplex with material of like kind and quality. On January 9, 1981, a fire occurred at the duplex. Chitsey and the insurance company were unable to agree as to the sum of money required to repair the building.

Chitsey then sued National Lloyd's asserting (1) breach of the insurance contract; (2) unfair insurance practices in violation of the Texas Insurance Code and State Board of Insurance regulations; and (3) breach of the insurance company's "duty of good faith and fair dealing." Over objection, the district court permitted National Lloyd's to file a trial amendment denying coverage. The insurance company's denial of coverage was predicated upon a provision of the policy purporting to "void" the policy if the insured willfully concealed or misrepresented any material fact or circumstance concerning the insurance.

The district court submitted the cause to the jury by thirty-one issues. The jury found, among other things, that:

(1) the cost of repairing the duplex was $16,000.00;

(2) National Lloyd's engaged in an unfair practice in handling the claim by "failing to use due diligence in determining the amount of [Chitsey's] loss";

(3) National Lloyd's breached "its duty of good faith and fair dealing" in its handling of the insurance claim which was a proximate cause of Chitsey's damages;

(4) Chitsey willfully concealed or misrepresented a material fact to the insurance company concerning the vacancy of the property and his intentions concerning his plans for the property at 5107 Leralynn.

Chitsey moved to disregard the jury's answer that he concealed his intentions concerning his plans for the property at 5107 Leralynn and for judgment predicated upon the remainder of the jury's verdict. The district court overruled the motion and rendered judgment that Chitsey take nothing.

By many points of error Chitsey attacks the rendition of judgment based upon the jury's finding that he willfully concealed a material fact from the insurance company in that he did not reveal his intentions concerning his plans for the property. By point of error six, Chitsey complains that the district court erred in overruling his motion to disregard the jury's answer to special issue number twenty-three because there was no evidence to support that answer. Special issue twenty-three provided:

Do you find from a preponderance of the evidence, whether before or after the loss in question, Ron Chitsey willfully concealed or misrepresented any material fact to National Lloyds Insurance Company, which was relied on by National

Lloyds Insurance Company in any of the following ways:

(1) Vacancy of the property in question;

(2) His intentions concerning his plans for the property in question.

Answer "We do" or "We do not".

Answer: We do

■ Chitsey argues that the judgment must be reversed because there was no evidence that any concealment or misrepresentation was relied upon by National Lloyd's. An insurer must prove, among other things, that it relied upon the insured's concealment or misrepresentation before the insurer may avoid policy coverage. *Mayes v. Massachusetts Mutual Life Ins. Co.*, 608 S.W.2d 612 (Tex.1980).

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the finding and consider only the facts and circumstances which tend to support that finding. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950).

On January 12, 1981, three days after the fire, Chitsey gave notice of the claim to the local insurance agency which, in turn, sent a property loss notice to National Lloyd's. From the information in the property loss notice, National Lloyd's set a $4500.00 "reserve," an arbitrary figure of the possible extent of the loss. On January 16, James F. Nash, a National Lloyd's claims adjuster came to Austin and inspected the fire damage to the duplex. He and Chitsey personally discussed and disagreed upon the extent of damages. Chitsey claimed that the duplex was a total loss and demanded payment of $16,000.00. Nash, on the other hand, thought the structure could be repaired and for less money. Nash admitted that he believed, at the time of the visit, that the origin of the fire was suspicious. Nash further testified that Chitsey related to him that the fire marshal had told Chitsey that the fire had been set intentionally. After talking to Chitsey, Nash visited with the fire marshal on the same day. The fire marshal told Nash that the fire was caused by arson. He also related that Chitsey planned to build condo-

miniums on the duplex site. An agent of the local insurance agency told Nash on February 4, 1981, that Chitsey had previously asked for a quote for coverage on a twelve unit condominium project.

In its brief and at oral argument, National Lloyd's emphasized that Chitsey failed to answer its letters or questions, thereby concealing his intentions for the property by his failure to respond. An inspection of these documents reveals, however, that such papers had little bearing on his intentions.

On January 16, Nash prepared a handwritten statement for Chitsey's signature. The proposed statement contained nothing concerning Chitsey's plans or intentions for the property. Chitsey refused to sign the statement stating that he had been advised not to sign anything. Also Nash tendered, and Chitsey refused to sign, a non-waiver agreement. The proposed non-waiver agreement made no reference to Chitsey's plans for the property.

On January 20, Nash sent a series of ten questions to Chitsey, which questions were prefaced with a reminder that "the policy provides that you must cooperate and furnish information requested and submit to questioning." Question six inquired: "Is it true you were planning to demolish these two buildings in order to build apartments or condominiums?" Question six demonstrates, of course, that National Lloyd's knew or had a good notion that Chitsey had such plans. Chitsey responded to this question, and most of the others, by marking it "N/A."

After receiving the incomplete answers, Nash and his supervisor, Charles M. Tindell, reviewed the questions and answers. Tindell edited the questions to include several new ones, but he *deleted* question six. On February 2, National Lloyd's sent Chitsey the new list of questions which did not include any inquiry into Chitsey's intentions or plans for the property. The thrust of the questions was directed at determining the vacancy, past tenants, and furnishings of the duplex. On February 4, Nash

sent Chitsey a letter stating that he needed the answers to the questions and that National Lloyd's was "reserving its rights under the policy to investigate." By the specific terms of the policy of insurance which provided that the insured submit to questioning *under oath*, Chitsey was not obligated to answer either set of questions.

With respect to his plan to build condominiums, Chitsey filed his application to change zoning of the property with the Austin Planning Commission on October 3, 1979. The Commission approved this on September 3, 1980. Prior to writing the policy, a National Lloyd's inspector visited the property on March 26, 1980, for the routine "new business" inspection to determine the market value coverage limits. One of the two photographs taken by the inspector and attached to his report plainly shows a sign attached to a tree in the front yard regarding a proposed zoning change. This fact was also noted in the inspector's report. Accordingly, National Lloyd's possessed this information before it wrote the coverage. On cross-examination regarding the pictures and report, adjuster Nash responded:

Q. So, Mr. Chitsey wasn't keeping anything from anybody, was he, about his possible seeking a zoning change to do something else with the property at some point in time?

A. That's correct.

Q. And you have it right here in your files; am I correct?

A. That's correct.

From the above summary of the facts, it is plain that National Lloyd's knew of the zoning request change before or at the time of issuance of the policy. The insurance company also learned of such request through the fire marshal and through discussions with a local agent. National Lloyd's knew immediately after the fire that probably someone had set the fire. It is also plain that Chitsey had no obligation to sign any of the documents or answer the questions sent him.

National Lloyd's did not plead arson as a defense, nor did it ever accuse Chitsey of burning the property. As a matter of fact, National Lloyd's pre-trial investigation was only directed toward two sources of dispute—vacancy of the duplex and the amount of damages from the loss. The amount of damages was the principal issue at trial. It was not until after the close of evidence that National Lloyd's tendered and obtained leave to file a trial amendment alleging that the loss was not covered by the policy. In sum, there is no evidence that National Lloyd's ever attempted to investigate or build a policy defense based on arson.

■ Assuming *arguendo* some evidence of concealment or misrepresentation, there is no evidence that National Lloyd's *relied* on Chitsey's concealment or misrepresentation. The insurance company knew of Chitsey's plans for the property before and after the fire. An insurer cannot be misled or deceived by a false statement made by the insured which the insurer knew to be false. *Bynum v. Signal Life Ins. Co.*, 522 S.W.2d 696 (Tex.Civ.App.1975, writ ref'd n.r.e.). Moreover, when one makes his own investigation of the facts, he cannot, as a matter of law, be said to have relied upon the misrepresentations of others. *Laughlin v. Federal Deposit Ins. Corp.*, 657 S.W.2d 477, 483 (Tex.Civ.App. 1983, no writ); *Kolb v. Texas Employers Ins. Assn.*, 585 S.W.2d 870, 872 (Tex.Civ. App.1979, writ ref'd n.r.e.). Accordingly, the district court should have granted Chitsey's motion to disregard the jury's answer to special issue twenty-three because there is no evidence that National Lloyd's relied upon Chitsey's misrepresentation. Point of error six is granted.

Chitsey asserts that the jury's answers to the remaining special issues entitled him to judgment based upon one of three theories of recovery:

(1) National Lloyd's committed an unfair act or practice in handling the claim.

(2) National Lloyd's breached its implied "duty of good faith and fair dealing" in handling the claim.

(3) National Lloyd's breached the contract of insurance.

National Lloyd's resists rendition of judgment for Chitsey by many crosspoints.[1]

## UNFAIR AND DECEPTIVE INSURANCE PRACTICES

The jury responded in answer to special issue number two that National Lloyd's engaged in an unfair act or practice in handling Chitsey's insurance claim by "failing to use due diligence in attempting to determine Chitsey's loss." National Lloyd's attacks that jury finding by the following crosspoint:

There was no evidence, or in the alternative, insufficient evidence that Appellee engaged in a false, misleading, or deceptive act in failing to use due diligence in determining the amount of [Chitsey's] loss.

Chitsey urges that this Court may render judgment based upon the jury's answer to special issue two by reason of Tex.Ins.Code Ann. art. 21.21, § 16(a) (1981). Section 16(a) provides:

Sec. 16. (a) Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.

Section 16(a) makes actionable three types of conduct, *Royal Globe Ins. Co. v. Bar Consultants*, 577 S.W.2d 688 (Tex. 1979):

1. any practice declared in sec. 4 of art. 21.21 to be "unfair methods of competition and unfair and deceptive acts or practices."

2. any practice defined by 17.46 of the DPTA as an "unlawful deceptive trade practice."

3. any practice declared in the rules or regulations lawfully adopted by the [State Board of Insurance] to be "unfair methods of competition and unfair and deceptive acts or practices."

Texas Insurance Code Ann. art. 21.21, § 4 contains eight subsections governing some aspects of the insurance business, but no such provision pertains to unfair settlement practices. That being the case, nothing in § 4 will support the rendition of a judgment for Chitsey based upon the jury's answer to special issue two.

Neither is National Lloyd's conduct, as established by the jury in response to special issue two, prohibited by the provisions of Tex.Bus. & Comm.Code § 17.46 (Supp. 1985).

State Board of Insurance Order No. 41060 adopted June 4, 1982, prohibits one from engaging in any trade practice "that is an unfair or deceptive act or practice as defined by the provisions of the Insurance Code of Texas or as defined by these rules and other Rules and Regulations of the State Board of Insurance." By its terms, the Board Order simply refers one back to the Insurance Code or to other rules or regulations of the agency. It is plain that the language of Board Order 41060 does not assist this Court, nor anyone else, in determining whether "failing to use due diligence in determining the amount of Plaintiff's loss" is an unfair or deceptive act proscribed by the law. *See: Texas Farm Bureau Mutual Insurance Company v. Vail*, 695 S.W.2d 692, Tex.App.—Dallas, 1985; *compare: Aetna Casualty & Surety Co. v. Marshall*, 699 S.W.2d 896, Tex.App.—Houston [1st Dist.], 1985. Board Order 41060, of course, contains no specific prohibition which may serve as a basis for rendition of judgment for Chitsey based upon the jury's response to the second spe-

---

**1.** National Lloyd's urges grounds which would vitiate the balance of the jury's verdict, thereby entitling it to judgment. National Lloyd's labels, unsuitably, these grounds "counterpoints" instead of "crosspoints." *Jackson v. Ewton*, 411 S.W.2d 715 (Tex.1967).

cial issue. Nevertheless, assuming *arguendo* that Board Order No. 41060 imposes upon National Lloyd's a "duty to use due diligence in determining the amount of [Chitsey's] loss," this Court will go forward and examine the insurance company's point that there is no evidence that it engaged in a false, misleading, or deceptive act.

■ The evidence concerning National Lloyd's adjustment of the loss is here summarized. On January 16, 1981, a week after the fire, Nash of National Lloyd's visited the property to inspect the fire damage. Nash concluded that the property could be repaired but Chitsey was convinced that it was a total loss. On June 16, Nash and Robert W. Caruthers, a home-builder and independent insurance adjuster, inspected the property and prepared an itemized estimate, concluding that the loss was $7079.29. Both Nash and Caruthers were from McLennan County. They did not obtain the services of a person from Travis County to inspect the property and prepare an estimate. In April 1981, Chitsey's counsel sent Nash two estimates from Travis County builders which concluded that the cost of repairing the duplex would be at least $16,000.00. In July 1981, Nash offered Chitsey's counsel the sum of $7079.29 to settle the claim. Chitsey filed suit in December 1981.

Chitsey points out that:

1. the National Lloyds' agents from Waco were not familiar with Austin building prices, nor did they hire a builder from Austin to make an inspection;

2. after receiving Chitsey's estimates from two Travis County builders attached to the letter demanding $16,-000.00, National Lloyd's did not respond with other estimates or conduct additional investigation to support its estimate of $7079.29;

3. after February 11, Nash did not further investigate the loss.

In sum, Chitsey and National Lloyd's were unable to agree upon the cost of repairing the fire-damaged duplex. Each party marshalled expert proof supporting its respective position. The insurance company made an offer to settle the claim for a sum which Chitsey was not willing to accept. The parties' differences finally had to be determined in the courthouse. Ultimately, the jury resolved the dispute as to damages in the amount claimed by Chitsey, $16,000.00. Under these facts this Court has concluded as a matter of law that the insurance company used due diligence in determining the amount of Chitsey's loss.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Chitsey claims, alternatively, that he is entitled to judgment based upon the jury's answers to those issues submitting the theory of the insurance company's breach of its implied "duty of good faith and fair dealing." As this Court understands, there is no rule in this state implying a covenant of good faith and fair dealing or a promise that neither party to a contract will do anything that injures the right of the other party to receive the benefits of the contract. *English v. Fischer*, 660 S.W.2d 521 (Tex.1983); *Cook Consultants, Inc. v. Larson*, 677 S.W.2d 718 (Tex.App.1984), *rev'd on other grounds*, 690 S.W.2d 567 (Tex. 1985); *Compare: Aetna Casualty & Surety Co. v. Marshall, supra.* Moreover, because the jury refused to find that National Lloyd's breach of such duty constituted gross negligence, it is not necessary to further consider this contention because a judgment predicated upon such breach would entitle him to no greater recovery than would a judgment based upon a conventional breach of contract.

## BREACH OF CONTRACT

■ Chitsey urges, finally, that he is entitled to rendition of judgment predicated upon the undisputed fact that the insurance company breached the contract of insurance. Pursuant to the jury's answer to special issue one, Chitsey suffered $16,-000.00 in damages resulting from that

breach. This Court agrees that Chitsey is entitled to judgment for breach of contract.

▮ The jury found $22,230.00 to be reasonable and necessary attorney's fees for legal services rendered during trial and $5000.00 for such services if an appeal were taken to this Court. As judgment was rendered for National Lloyd's, the judgment awarded no attorney's fees. If successful in his claim for breach of contract, Chitsey was entitled to attorney's fees, pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp.1985). *Commonwealth Lloyd's Insurance Co. v. Thomas,* 678 S.W.2d 278, 283 (Tex.App.1984, writ ref'd n.r.e.).

▮ By crosspoint the insurance company resists rendition of judgment for attorney's fees claiming, that the amount of attorney's fees proved up represented legal services for the preparation and trial of *all* of Chitsey's claims and not solely his claim for breach of contract. The crosspoint will be overruled because *the* insurance company waived any complaint concerning allocation of attorney's fees by failing to level that objection to the submission of the special issue. Tex.R.Civ.P.Ann. 274 (1976). *First-Wichita National Bank v. Wood,* 632 S.W.2d 210 (Tex.App.1982, no writ).

National Lloyd's has other crosspoints. None of such crosspoints has merit and all are overruled.

The judgment of the district court is reversed, and the cause is remanded to the district court for entry of judgment for Chitsey for $16,000.00 in damages for breach of contract, for attorney's fees, for pre-judgment and post-judgment interest, and for costs.