LEXINGTON INSURANCE COMPANY

v.

BENNETT EVANS GRAIN
COMPANY, Defendant,

General Adjustment Bureau, Inc., Joe
Bonnano (Third Party Defendants).

C.A. No. G–84–184.

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 27, 1986.

Franklin H. Perry and Randy A. Nelson, Thompson, Coe, Cousins and Irons, Dallas, Tex., for plaintiff Lexington Insurance Company.

Russell T. Van Keuren, and James McGraw, Houston, Tex., for defendant Bennett Evans Grain Co.

H. Jerome Gette, T.B. Nicholas, Jr., Robins, Zelle, Larson & Kaplan, Dallas, Tex., for third-party defendants General Adjustment Bureau Inc., and Joe Bonnano.

MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

This controversy began as a suit for declaratory judgment on an insurance contract. Today this cause also involves claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; article 21.21 of the Texas Insurance Code ("TIC"); and section 17.50 of the Texas Deceptive Trade Practices Act ("DTPA").

I.

Lexington Insurance Company ("Lexington") insured the property of Bennett Evans Grain Company ("Bennett"). Bennett

stored grain for the Commodity Credit Corporation ("CCC") a division of the United States Department of Agriculture.[1] In August, 1983, Hurricane Alicia damaged Bennett's facilities. Bennett duly reported the loss to Lexington. Bennett claims that Alicia destroyed property including Building No. 2, its main storage building, and the grain stored therein. Lexington and Bennett settled the claims for damage to other Bennett property. Bennett claims that Lexington, through ABJ Adjusters, Inc. ("ABJ"), agreed that approximately $450,-000.00 would settle the claim for Building No. 2 and the grain. Lexington allegedly rejected this amount and discharged ABJ. Lexington asserts that it questioned the extent of the claimed damage and whether part of the damage existed prior to Alicia.

Lexington retained GAB Business Services, Inc. ("GAB"). GAB's agent, Joseph Bonnano negotiated unsuccessfully with Bennett regarding Building No. 2 and the grain. Bennett claims that Bonnano agreed that the grain could be partially salvaged at a cost of $49,000.00 but that Lexington also wrongfully rejected this settlement. At Bonnano's request, the parties met on April 10, 1984. Jim Bennett, apparently the sole owner of Bennett, stated in deposition that Bonnano made him the following offer at the meeting:

> I'm not entertaining a claim on the [grain] at all. I will put a new face on your building and give you $100,000.00 to settle the entire claim.... You know, it's going to be awhile before you get a claim from CCC. Take the money and use it as you see fit.

Jim Bennett refused, negotiations broke down, and Bonnano allegedly sent a letter to CCC indicating that there was little damage to the grain and that settlement was unlikely.[2]

Lexington then filed this suit for declaratory judgment and to enjoin Bennett to allow inspection of the damaged premises. Bennett counterclaimed under the insur-ance contract, the DTPA, the TIC, and RICO, and impleaded GAB and Bonnano under RICO.

GAB and Bonnano move for summary judgment. Lexington moves for summary judgment on all claims other than the action on the insurance contract. Bennett moves to compel discovery; to strike Lexington's pleadings and for default or, in the alternative to require Lexington to deposit funds in the registry of the court; and for partial summary judgment. Pursuant to the standard for summary judgment set forth in *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir.1985), the Court grants the summary judgment motions of Lexington, GAB and Bonnano, and denies the summary judgment motion of Bennett. The Court denies Bennett's motions to compel and to strike. The Court first turns to Bennett's RICO claim.

## II.

The gravamen of plaintiff's RICO action is the requirement of "at least two acts of racketeering activity" to demonstrate the required "pattern of racketeering activity." 18 U.S.C. § 1961(5). Bennett alleges three indictable predicate acts as defined in 18 U.S.C. § 1961(1)(B): 1) a bribe under 18 U.S.C. § 201, 2) mail fraud under 18 U.S.C. § 1341, and 3) wire fraud under 18 U.S.C. § 1343. Factually, these predicate acts stem from Bonnano's offer of $100,000.00 which plaintiff characterizes as an attempted bribe. The Court, of course, is not bound by Mr. Bennett's characterization of the events. Instead, the Court looks at the law and the evidence submitted by the parties.

Bribery under 18 U.S.C. § 201 requires an offer of something of value to a government official with the intent to influence some official act or have the official otherwise betray his public trust. *E.g., Parks v. United States*, 355 F.2d 167 (5th Cir.1965) (per curiam). In deposition Jim Bennett

---

1. The CCC is not a party to this litigation.

2. In its third amended counter-claim and third-party claim, Bennett attempted to add a claim for tortious interference with a business rela-tionship based on the letter to the CCC. The Court denied this motion for leave to amend. Thus, the Court now disregards any claims of damage based on tortious interference.

stated that the offer of $100,000.00 and to put a new face on the building was a ridiculously low offer of settlement. Bennett alleges that Bonnano made the offer "behind the back" of the CCC, the owner of the grain. Yet Jim Bennett stated that even if he accepted the offer, he would still eventually have to pay the government for the damaged grain. Bennett's building with a new face—presumably, according to the deposition testimony, replacing the tin facing blown off by Alicia—would still be damaged if Alicia had damaged more than the facing. Bennett has not attempted to show that the building belonged to another party. Bennett was the only beneficiary of the insurance policy.[3] Thus, Jim Bennett's statements thus raise an interesting question: why and how would an insurer bribe the insured to act against his own financial interests in settling his claim? The answer, of course, is that he could not. This scenario does not reveal an indictable act of bribery.

Assuming, however, that the offer was an attempted bribe, it was only one act. Jim Bennett stated in deposition that only at the meeting did Bonnano offer him a "bribe." If Bonnano had also made Bennett the offer over the telephone, *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1354–55 (5th Cir.1985), might compel this Court to find two predicate acts. In *R.A. G.S.,* the plaintiff alleged that defendant or its lawyer twice mailed plaintiff the same fraudulent invoices. The trial court dismissed plaintiff's RICO action on the grounds plaintiff had not alleged or shown a pattern of racketeering activity because there was only one predicate act of mail fraud. The Court of Appeals reversed, holding that plaintiff factually alleged two indictable acts of mail fraud. *Id.* Here, a telephone call arranging a meeting or a letter discussing settlement is not a separately indictable act of bribery sufficient to establish a pattern of racketeering activity under *R.A.G.S.*

Bennett also alleges that Lexington, GAB, and Bonnano delayed settlement to force Bennett to settle its claim for less than its fair value as a result of financial pressures on Bennett. Bennett alleges that Lexington, GAB, and Bonnano used the mails and telephone to further this "conspiracy" and to arrange the meeting where Bonnano attempted to bribe Mr. Bennett. Bennett contends that these are indictable acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A scheme to defraud is an essential element of both offenses. *E.g., United States v. Schaffer,* 599 F.2d 678 (5th Cir.1979) (per curiam) (mail fraud); *United States v. Foley,* 683 F.2d 273 (8th Cir.1982) (wire fraud). Fraud consists of a false representation or material nondisclosure "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Schaffer,* 599 F.2d at 679. Although Bennett's allegations suggest deplorable conduct in settling an insurance claim on the part of Lexington and its agents, the allegations do not show a scheme to defraud.

In conclusion, Bennett's RICO claims must be dismissed because Bennett fails to establish at least two predicate acts of racketeering activity pursuant to 18 U.S.C. § 1961.

### III. Bennett's Texas Statutory Claim

Bennett sues pursuant to the Unfair Competition and Unfair Practices Act ("UCUPA"), Tex.Rev.Civ.Stat.Ann. art. 21.-21, § 16 (Vernon 1981), and the DTPA, Tex.Rev.Civ.Stat.Ann. § 17.50 (Vernon Supp.1986) for treble damages and attorneys' fees for unfair settlement practices and unconscionable conduct in the settlement of an insurance claim.

This issue requires the Court to interpret three interlocking, concurrently enacted consumer protection statutes. In 1973, the 63rd Texas Legislature enacted the DTPA, section 16 of article 21.21, and the Unfair Claim Settlement Practices Act ("UCSPA"), Tex.Rev.Civ.Stat.Ann. art. 21.21–2 (Vernon

---

**3.** Alvin State Bank intervened in this suit. The Bank claims that Bennett assigned all of its rights and interest in the insurance policy to the

Bank on November 20, 1984. This was after the events giving rise to the alleged RICO claim.

1981). *See generally* Comment, *An Insurer's Failure to Settle: Standing Under the Stowers Doctrine, Texas Deceptive Trade Practice Act, and Article 21.21 of the Insurance Code*, 34 Baylor L.Rev. 441 (1982) [hereinafter cited is *Comment*]. The Court, therefore, adheres to the requirement that it construe together concurrently enacted and in pari materia legislation. *Duval Corp. v. Sadler*, 407 S.W.2d 493 (Tex.1966); *State v. Dyer*, 145 Tex. 586, 200 S.W.2d 813 (1947).

The DTPA, article 21.21, and article 21.-21-2, authorize state agencies to investigate and sanction statutory violations. Section 17.50 of the DTPA[4] and section 16 of article 21.21[5] explicitly provide consumers with a private cause of action and the possibility of treble damages and attorneys' fees. Article 21.21-2, on the other hand, does not create a private cause of action; it only authorizes the Texas Board of Insurance Commissioners ("Board") to investigate and sanction unfair claims settlement practices. *See McKnight v. Ideal Mutual Insurance Co.*, 534 F.Supp. 362, 364 (N.D.Tex.1982) (collecting Texas cases). Beyond the simple lack of language creating a private cause of action, this conclusion makes sense. Article 21.21-2 prohib-

its unfair claim settlement *practices*. Section 2 of 21.21-2 explicitly states that the unfair claim settlement acts must be committed with sufficient frequency to actually be a practice. Tex.Rev.Civ.Stat.Ann. art. 21.21-2, § 2 (Vernon 1981). Thus, a private cause of action for one unfair settlement would be inconsistent with section 2.

Bennett does not proceed directly under article 21.21-2. Rather, Bennett asks the Court to find a private cause of action for the DTPA and the UCUPA. Because the Texas Supreme Court has not addressed this question, the Court must make an *Erie*-guess and rule as it believes that the Texas Supreme Court would rule. *E.g.*, *Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). *See generally* 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4507, at 86-103 (1982).

The Court first looks to the structure of the acts. At least one Texas court has held, and this Court agrees, that the Texas Legislature intended to "seal off" unfair claim settlements from the expansive damage remedies of the DTPA and the TIC. *See Texas Farm Bureau Mutual Insurance Co. v. Vail*, 695 S.W.2d 692, 694 (Tex.

---

4. Tex.Rev.Civ.Stat.Ann. § 17.50 (Vernon Supp. 1986) provides in relevant part:

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000.00. If

the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000.00....

5. Tex.Rev.Civ.Stat.Ann. art. 21.21, § 16 (Vernon 1981) provides in relevant part:

(a) Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended....

Civ.App.—Dallas, 1985, writ requested) (quoting *Comment, supra,* at 455). By enacting 21.21–2, the 63rd Legislature showed that it clearly understood the nature of an unfair claim settlement. The 63rd Texas Legislature also clearly understood how to grant a private cause of action: it did so in section 16 of UCUPA and § 17.50 of the DTPA. By cross-referencing the DTPA and UCUPA, the 63rd Texas Legislature showed that it knew how to expressly import a private cause of action into one statute from another. Yet the Legislature did not create a private cause of action for unfair claim settlements in 21.21–2. Nor did the 63rd Texas Legislature explicitly import 21.21–2 into either the DTPA or the UCUPA.

The Court finally notes that if the DTPA or the UCUPA by their own terms prohibit unfair claim settlements, 21.21–2 is superfluous. The DTPA and the UCUPA authorize state agency action. If they prohibit unfair claim settlements, 21.21–2 authorizes nothing new.

The Court now addresses Bennett's specific arguments. Bennett contends that violations of 21.21–2 are actionable under section 16 of 21.21. The Legislature, however, expressly limited private actions under section 16 to violations of 1) section 4 of article 21.21–2) the rules and regulation adopted by the Board under article 21.21, and 3) DTPA section 17.46. The Legislature did not incorporate 21.21–2 into section 4 of article 21.21 and no language in section 4 could be construed to give Bennett a cause of action for a violation of article 21.21–2. *Chitsey v. National Lloyd's Insurance Co.,* 698 S.W.2d 766, 777 (Tex.Civ.App.—Austin 1985, writ requested).

Bennett next argues that it has a cause of action under the second prong of section 16, the Board adopted rules and regulations. The Board promulgated Rules 059.-50.01.001–.005, which contain broad language prohibiting "an unfair or deceptive act or practice as defined by the provisions of the Insurance Code of Texas or as defined by these and other Rules and Regulations of the State Board of Insurance authorized by the Code." Bennett argues that this language in effect incorporates an action under article 21.21–2 into section 16. The Court disagrees with this tortious logic. *Cf. Chitsey,* 698 S.W.2d at 770. The rule as interpreted by Bennett would not be authorized by the Code. Unfair claim settlement practices are governed by article 21.21–2 and article 21.21–2 only authorizes Board sanctions, not private actions. Rules 059.50.001–.005 were promulgated under articles 21.20 and 21.21 which do not address unfair claim settlement practices.

Bennett furthermore argues that Rules 059.50.01.001–.005 incorporate Tex.Rev.Civ. Stat.Ann. art. 1.14–2, § 8(b) (Vernon 1981) into section 16. Section 8(b) prohibits an insurance agent from placing insurance with surplus line insurers that are not authorized by the Board to do business in Texas unless, inter alia, the insurer is "of good repute and provide[s] reasonably prompt service to its policyholders in the payment of just losses and claims." Under article 1.14–2, an agent may be penalized for violating article 1.14–2 and an insured may sue for breach of contract. The Court, however, will not contort section 8(a) into an action under section 16 for attorneys fees and treble damages for an insurer's unfair claim settlement. Neither the rules Bennett relies on nor article 1.14–2 explicitly address an unfair claim settlement.

Bennett then turns to the third prong of section 16 of article 21.21—"any practice defined by section 17.46 of the [DTPA] as an unlawful deceptive trade practice"—and argues that Lexington violated DTPA section 17.46(a). Section 17.46(a) provides: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 17.46(b) lists specific false, misleading, or deceptive acts. Bennett does not allege or show a violation of subsection (b).

The Court begins by noting that when a consumer sues under the DTPA for a false, misleading, or deceptive act or practice, the consumer cannot sue under subsection (a).

*See* Tex.Rev.Civ.Stat.Ann. 17.50(a) (Vernon Supp.1986). Bennett essentially argues that although there is no private cause of action under the DTPA for violations of 17.46(a), the Legislature created one under the TIC in section 16 of article 21.21. The wording of section 16, however, belies this conclusion. It is tantological to say that a "[f]alse, misleading, or deceptive act" defines an "unlawful deceptive trade practice." Based on this reasoning, in *Mobile County Mutual Insurance Co. v. Jewell,* 555 S.W.2d 903, 910–11 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.), the court held that the legislature intended that only violations of section 17.46(b) are incorporated into section 16 of article 21.21. *Accord General Accident, Fire and Life Assurance Corp. v. Legate,* 578 S.W.2d 505, 509, 507 (Tex.Civ.App.—Texarkana 1979, no writ). *But see Allstate Insurance Co. v. Kelly,* 680 S.W.2d 595, 605 (Tex.Civ.App.—Tyler 1984, no writ) (citing dicta in *Royal Globe Insurance Co. v. Bar Consultants,* 577 S.W.2d 688 (Tex.1979)).

Even if the legislature intended to incorporate subsection (a) into section 16, Bennett's claim must be dismissed. A plaintiff under article 21.21, § 16 must allege and show that he was injured as a result of an enumerated violation. Tex.Rev.Civ.Stat. Ann. art. 21.21, § 16(a) (Vernon 1981). Denial of insurance coverage is not a deceptive trade act or practice when the denial does not terminate or lessen the insurer's obligations or extinguish the insured' rights under the insurance contract. *American Ins. Co. v. Reed,* 626 S.W.2d 898 at 905; *Legate,* 578 S.W.2d at 507; *Lone Star Life Insurance Co. v. Griffin,* 574 S.W.2d 576, 580 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Bennett has not alleged or shown that any act of Lexington has extinguished any of Bennett's rights under the insurance contract.

In *Royal Globe,* 577 S.W.2d 688, 695 (Tex.1979), the Texas Supreme Court held that in a DTPA suit against an insurer for post-loss representations, the plaintiff must show that he relied on a false, misleading, or deceptive representation and that he was damaged as a result. *Crossland v. Canteen Corp.,* 711 F.2d 714, 726 (5th Cir.

1983); *Jay Freeman Co. v. Glens Falls Insurance Co.,* 486 F.Supp. 140, 142 (N.D. Tex.1980); *Molinar v. Plains Insurance Co.,* 660 S.W.2d 845, 850 (Tex.Civ.App.— Amarillo 1983, no writ). Plaintiff's alleged damages stem from the loss and Lexington's subsequent denial of the claim, not any representation that Lexington would pay $400,000.00.

In suits directly under the DTPA, section 17.50 provides that the deceptive act must be a "producing cause of actual damage." Furthermore, the plaintiff must be a consumer, one "who seeks or acquires by purchase or lease, any goods or services ..." Tex.Rev.Civ.Stat.Ann. § 17.45(4) (Vernon Supp.1986). An insurer's post-loss representations or denial of coverage is not in connection with a purchase or sale; therefore, Bennett is not a consumer. *Rosell v. Farmers Texas County Mutual Insurance Co.,* 642 S.W.2d 278, 279 (Tex.Civ.App.— Texarkana 1982, no writ); *American Insurance Co. v. Reed,* 626 S.W.2d 898, 902 (Tex.Civ.App.—Eastland 1981, no writ); *Hartford Insurance Co. v. Carroll,* 575 S.W.2d 578, 580 (Tex.Civ.App.—Beaumont 1978, no writ). *But see Ranger County Mutual Insurance Co. v. Guinn,* 608 S.W.2d 730, 731–32 (Tex.Civ.App.—Tyler 1980, writ dismissed).

In conclusion, Bennett's claim under the TIC and the DTPA must be dismissed.

## IV. Bennett's Common Law Bad Faith Claim

Bennett asserts a common law cause of action in tort for bad faith. Bennett contends that Lexington breached its implied duty to settle Bennett's claim fairly and in good faith. In *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983), the Texas Supreme Court held that there is no general duty of good faith implied in a contract. In a concurring opinion, Justice Spears noted that the Court was not overruling its recognition of an implied duty of good faith that arises from some special relationship of the parties. *Id.* at 524. Justice Spears specifically noted *Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544

(Tex.Comm'n.App.1929, opinion adopted), which recognized an insurer's obligation of good faith in settling a suit against the insured when the insurer is defending the action. *See also Aetna Casualty & Surety Co. v. Marshall,* 699 S.W.2d 896 (Tex. Civ.App.—Houston [1st Dist.] 1985, writ requested) (recognizing obligation of good faith of insurer under agreed judgment between insured and insurer).

▉ Bennett's action, however, does not implicate the *Stowers* situation where the insured has a quasi-fiduciary responsibility to the insured. Rather, an insured's claim under the policy places the parties in direct conflict. This Court holds that under *English,* Lexington has no implied duty to deal fairly and in good faith in adjusting Bennett's insurance claim. *Thompson v. M & B Construction Corp.,* 585 F.Supp. 561 (N.D.Tex.1984). *See also Cook Consultants, Inc. v. Larson,* 677 S.W.2d 718, 720–21 (Tex.Civ.App.—Dallas, 1984, no writ); *Texas Farm Bureau Mutual Insurance Co. v. Vail,* 695 S.W.2d 692, 694 (Tex.Civ. App.—Dallas 1985, writ requested).

### V. Bennett's Discovery Motion

▉ Bennett moves to compel discovery of Lexington's files relating to Bennett's claim ("claim file"). Tex.R.Civ.P. 186a prohibits discovery of the claim file. *Maryland American General Insurance Co. v. Blackmon,* 639 S.W.2d 455, 457–58 (Tex. 1982). Pursuant to Fed.R.Evid. 501, the Court, therefore, must deny Bennett's motion.

### VI. Bennett's Motion to Strike

Bennett moves pursuant to Tex.Rev.Civ. Stat.Ann. art. 1.14–1, § 6(a)1 (Vernon 1981) (unauthorized insurers) to strike and for default, or to require Lexington to deposit into the registry of the Court funds sufficient to secure the payment of a final judgment. The Court, however, finds that Lexington has sufficient assets from which to satisfy an adverse judgment. Therefore, the Court denies plaintiff's motion. Article 1.14–1, § 6(a)1.

### VII. Bennett's Partial Summary Judgment Motion

Bennett moves for partial summary judgment for $99,235.00 and attorneys fees. Bennett moves for this amount based on a demand by the CCC made on Bennett for damaged rice that Bennett shipped to it. The Court finds, however, that there are fact issues material to Bennett's claims. The parties have tendered conflicting affidavits on the extent and cause of the damage to the grain. Therefore, the Court must deny Bennett's motion for partial summary judgment.

### VIII.

In summary, it is ORDERED, ADJUDGED and DECREED as follows:

1. the motion for summary judgment of GAB and Joe Bonnano is GRANTED;

2. the motion for partial summary judgment of Lexington is GRANTED;

3. Bennett's motion to compel discovery is DENIED;

4. Bennett's motion to strike is DENIED; and

5. Bennett's motion for partial summary judgment is DENIED.